[No. C001349. Third Dist. Aug. 24, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID JAMES ARMITAGE, Defendant and Appellant.

406

408

■■■■■■■■■

■■■■■■■■■■■■■■■

## COUNSEL

David G. Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, J. Robert Jibson and Maureen S. Dunn, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SPARKS, J.**—On a drunken escapade on the Sacramento River in the middle of a spring night, defendant David James Armitage flipped his boat over and caused his companion to drown. As a result of this accident, defendant was convicted of the felony of drunk boating causing death in violation of former Harbors and Navigation Code section 655, subdivision (c).[1] He makes three claims on appeal. The first is that the evidence is insufficient because the prosecution failed to prove, in addition to operating

---

[1] At the time of defendant's crime Harbors and Navigation Code, section 655, subdivision (c) provided: "No person shall operate any boat or vessel or manipulate any water skis, aquaplane, or similar device while under the influence of intoxicating liquor, any drug, or under the combined influence of intoxicating liquor and any drug, and while so operating, do any act forbidden by law, or neglect any duty imposed by law, in the use of the boat, vessel, water skis, aquaplane, or similar device, which act or neglect proximately causes death or serious bodily injury to any person other than himself." (Stats. 1981, ch. 897, § 2, pp. 3418-3419.) Since the time of defendant's crime section 655 has been amended. The provisions of former subdivision (c) are now contained, in substantially the same language, in subdivision (e). (See Stats. 1986. ch. 516, § 1.)

With exceptions not relevant here, a "vessel" is defined as "every description of watercraft used or capable of being used as a means of transportation on water . . . ." (Harb. & Nav. Code, § 651, subd. (c).) A "boat" includes a vessel manufactured or used primarily for noncommercial use. (Harb. & Nav. Code, § 651, subd. (d)(1).) It obviously includes the type of recreational boat owned by defendant. The statute governs any person who operates a boat or vessel. An "operator" is defined as "the person on board who is steering the vessel while underway." (Harb. & Nav. Code, § 651, subd. (k).)

the boat while under the influence of intoxicating liquor, that defendant committed "any act forbidden by law, or neglect[ed] any duty imposed by law" which caused the death of the victim. (Former Harb. & Nav. Code. § 655. subd. (c).) The dispute is over what "law" is referred to in the statute. We hold that the term "law" includes at least the safety regulations adopted by the Department of Boating and Waterways, as well as other statutory provisions of the Harbors and Navigation Code, which forbid acts by, or impose duties upon, the operator of a vessel. So construed, we conclude that reckless or negligent boating in violation of Harbors and Navigation Code section 655, subdivision (a) and operating a vessel at an unsafe speed in violation of California Administrative Code, title 14, section 6615, separately or conjointly, constitute the requisite acts or omissions which undergird the conviction.

Defendant next claims that he cannot be held criminally responsible for the death because the victim, against his warning, turned loose of the overturned boat and drowned while foolhardily attempting to swim ashore. We hold that the unreflective but predictable act of the victim to escape from a peril created by defendant did not break the causal connection between the drunken boating and the death of the victim.

The last contention is that the prosecution failed to establish the corpus delicti of the crime before defendant's admissions were received into evidence. We conclude that the evidence was sufficient to establish that the crime was committed by someone and hence that the corpus delicti was adequately shown. Having rejected all of defendant's contentions, we shall affirm the judgment.

FACTS

On the evening of May 18, 1985, defendant and his friend, Peter Maskovich, were drinking in a bar in the riverside community of Freeport.[2] They were observed leaving the bar around midnight. In the early morning hours defendant and Maskovich wound up racing defendant's boat on the Sacramento River while both of them were intoxicated.[3] The boat did not contain

---

[2] Defendant was originally charged with one count of involuntary manslaughter (Pen. Code, § 192, subd. (b)), as well as felony drunk boating (Harb. & Nav. Code, § 655, subd. (c)). Pursuant to a bargain the People dismissed the involuntary manslaughter charge, and agreed that if found guilty defendant would not be sentenced to more than the middle base term (two years) for the felony drunk-boating charge. Defendant agreed to submit the issue of his guilt to the trial court on the preliminary hearing transcript and the evidence taken on his motion to suppress the evidence. Our recitation of the facts is derived from these sources.

[3] An autopsy revealed that at the time of his death Maskovich had a blood alcohol level of .25 percent. A blood sample taken from defendant at approximately 7 a.m. revealed a blood

any personal flotation devices. About 3 a.m. Gary Bingham, who lived in a house boat in a speed zone (five miles per hour, no wake), was disturbed by a large wake. He went out to yell at the boaters and observed a small aluminum boat with two persons in it at the bend in the river. The boaters had the motor wide open, were zig-zagging, and had no running lights on at the time. About the same time, Rodney and Susan Logan were fishing on the river near the Freeport Bridge when they observed an aluminum boat with two men in it coming up the river without running lights. The occupants were using loud and vulgar language, and were operating the boat very fast and erratically.

James Snook lives near the Sacramento River in Clarksburg. Some time around 3 a.m. defendant came to his door. Defendant was soaking wet and appeared quite intoxicated. He reported that he had flipped his boat over in the river and had lost his buddy. He said that at first he and his buddy had been hanging on to the overturned boat, but that his buddy swam for shore and he did not know whether he had made it. As it turned out, Maskovich did not make it; he drowned in the river.

Mr. Snook notified the authorities of the accident. Deputy Beddingfield arrived and spent some time with defendant in attempting to locate the scene of the accident or the victim. Eventually Deputy Beddingfield took defendant to the sheriff's boat shed to meet with officers who normally work on the river. At the shed they were met by Deputy Snyder. Deputy Snyder attempted to question defendant about the accident and defendant stated that he had been operating the boat at a high rate of speed and zig-zagging until it capsized. Defendant also stated that he told the victim to hang on to the boat but his friend ignored his warning and started swimming for the shore. As he talked to defendant, the officer formed the opinion that he was intoxicated. Deputy Snyder then arrested defendant and informed him of his rights. Defendant waived his right to remain silent and repeated his statement.

DISCUSSION

I

A. *Construction of the Statute.*

The evidentiary dispute turns on the construction of the statute. ▆▆ Defendant contends that the evidence is insufficient because it

---

alcohol level at that time of .14 percent. Defendant does not dispute that he was intoxicated at the time of the accident.

fails to show a violation of the Harbors and Navigation Code or any neglect of a duty imposed by that code which caused the death of the victim. Arguing that the felony drunk-boating statute should be construed in the same manner as the nearly identical drunk-driving statute, defendant notes that the act forbidden by law and neglect of any duty imposed by law under the drunk driving statute has been held to refer only to acts forbidden by the Vehicle Code and to duties imposed by that code and not to acts or duties prohibited or imposed by other statutes, laws or regulations. (*People v. Clenney* (1958) 165 Cal.App.2d 241, 253 [331 P.2d 696].) In like fashion, he urges, the acts forbidden by law and the neglect of duties imposed by law under the drunk-boating statute must only refer to acts forbidden by and duties imposed by the Harbors and Navigations Code. Arguing that the accident happened in the open river where there was no speed limit,[4] defendant contends that the prosecution failed to establish that any violation of the Harbors and Navigations Code or any neglect of a duty imposed by that code.

The Attorney General retorts by noting that the *Clenney* court's construction of the Vehicle Code has been repudiated by statute and that the unlawful act or neglect of duty element of felony drunk driving is now satisfied by evidence which establishes that defendant's conduct amounts to no more than ordinary negligence. (*People v. Oyaas* (1985) 173 Cal.App.3d 663, 669 [219 Cal.Rptr. 243].) Thus, he argues by analogy, even in the absence of a specific statutory standard, a violation of the common law duty of an operator of a boat to use due care should be sufficient to constitute a neglect of a duty imposed by law. Neither analysis is persuasive.

In dictum, the Court of Appeal for the First District declared in *People v. Clenney, supra,* 165 Cal.App.2d at page 253, that "the 'any act forbidden by law' or the 'neglects any duty imposed by law' in section 501 [now § 23153] refers to acts forbidden by the Vehicle Code and to duties imposed by the Vehicle Code." (See also *People v. Phillips* (1985) 168 Cal.App.3d 642, 647

---

[4]Harbors and Navigation Code section 655.2 provides: "Every owner, operator, or person in command of any vessel propelled by machinery is guilty of a misdemeanor who uses it or permits it to be used at a speed in excess of five miles per hour in any portion of the following areas not otherwise regulated by local rules and regulations: [¶] (a) Within 100 feet of any person who is engaged in the act of bathing. A person engaged in the sport of water skiing shall not be considered as engaged in the act of bathing for the purposes of this section. [¶] (b) Within 200 feet of any: [¶] (1) Beach frequented by bathers. [¶] (2) Swimming float, diving platform, or lifeline. [¶] (3) Way or landing float to which boats are made fast or which is being used for the embarkation or discharge of passengers. [¶] The provisions of this section shall apply to all waters which are in fact navigable regardless of whether they are declared navigable by this code."

No claim is made in this case that defendant was violating this section at the time of the accident.

[214 Cal.Rptr. 417].) The *Clenney* court felt constrained to reach this conclusion because "[i]f a violation of any act is sufficient then the conclusion is inescapable that the statute does not give sufficient notice and fair warning." (165 Cal.App.3d at pp. 252-253.) But as the Court of Appeal for the Second District later noted in *People* v. *Johnson* (1964) 230 Cal.App.2d 80 [40 Cal.Rptr. 711], "[t]he language of the statute does indeed contain a limitation: it refers to any act forbidden by law *in the driving of such vehicle.*" (*Id.,* at p. 85, fn. 3, italics in original.) Because the issue was not pertinent in that case, the *Johnson* court, however, did not undertake to determine "whether all of the prohibitions which apply to driving a motor vehicle are to be found in the Vehicle Code, as the *Clenney* opinion asserts, or whether some may be recorded elsewhere in the law." (*Ibid.*)

So the matter stood until 1981, when the Legislature added subdivision (c) to section 23153 of the Vehicle Code: "In proving the person neglected any duty imposed by law in the driving of the vehicle, it is not necessary to prove that any specific section of this code was violated." (Stats. 1981, ch. 940, §§ 10, 34, pp. 3566, 3578.) Although the amendment only related to a duty imposed by law and not to acts in violation of law, the court in *People* v. *Oyaas, supra,* 173 Cal.App.3d at page 669, nevertheless declared that the unlawful act or omission element of Vehicle Code section 23153 need not be a violation of any specific section of the Vehicle Code. While that may have previously been a requirement under *Clenney,* it has now been removed by the addition of subdivision (c) to the section. (*Id.,* at p. 669.) Consequently, the *Oyaas* court held "that the *unlawful act or neglect of duty* element of Vehicle Code section 23153 is satisfied by evidence which establishes that the defendant's conduct amounts to no more than ordinary negligence." (*Ibid.,* italics in original.) It is against this background that the parties advance their contentions.

Whatever the correct construction of the Vehicle Code may be, we are satisfied that the term "law" as used in former Harbors and Navigation Code section 655, subdivision (c) (now Harb. & Nav. Code, § 655, subd. (e)) at least includes administrative regulations dealing with boat safety as well as other sections of that code. Unlike the Vehicle Code, which is a virtual compendium of rules governing the use and operation of motor vehicles, the Harbors and Navigation Code does not contain a comparable statutory listing of regulations and the rules of the road for waterways. Instead, declaring that it is "the policy of this state to promote safety . . . with the use and equipment of vessels and to promote uniformity of laws," the Legislature has explicitly authorized the Department of Boating and Waterways to "establish and maintain for the use of vessels on the waters of this state rules of the road and pilot rules in conformity with those contained in

the federal navigation laws or the navigation rules promulgated by the United States Coast Guard." (Harb. & Nav. Code, §§ 650, 655.3.) A violation of a regulation adopted pursuant to that section is expressly declared to be a crime. "Any person who violates Section . . . 655.3 . . , or any regulations adopted by the department pursuant thereto, is guilty of a misdemeanor . . . ." (Harb. & Nav. Code, § 668.) The department is further directed to adopt and publish guidelines for safe vessel operation and to issue regulations establishing safety standards for boats and associated equipment. (Harb. & Nav. Code, §§ 651.5, 652.) Finally, and most persuasively of all, the department is directed in the reckless boating statute to "adopt regulations for the use of vessels, water skis, aquaplanes, or similar devices in a manner which will minimize the danger to life, limb, or property consistent with reasonable use of the equipment for the purpose for which it was designed." (Harb. & Nav. Code, § 655, subd. (a).) In light of this clear expression of legislative purpose, we conclude that term "law" as used in the section under review includes safety regulations adopted by the department in compliance with these legislative directives.[5] ■ Such a construction is consistent with the long-established rule that valid administrative regulations have the force and effect of law. (*Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 401 [128 Cal.Rptr. 183, 546 P.2d 687]; *Mission Ins. Group, Inc.* v. *Merco Construction Engineers, Inc.* (1983) 147 Cal.App.3d 1059, 1069 [195 Cal.Rptr. 781].)

■ On the other hand, we discern nothing in the history of the drunk boating statute which suggests that the term "law" was meant to encompass duties imposed by the common law rather than by legislative enactment. Unlike the drunk driving statute, this statute does not contain a provision declaring it is unnecessary to prove a duty imposed by any specific code section. The question is whether we should nevertheless construe the term "law" to include the common law. In our view, the rules governing statutory construction of penal laws militate against such an interpretation. In California, there is no such thing as a nonstatutory crime. Penal Code

---

[5] In 1986, after the commission of the offense in this case, the Legislature included the operation of a vessel in the definition of the crime of vehicular manslaughter. (Pen. Code, § 192.5.) Among other things, that crime is now committed in operating a vessel "in the commission of an unlawful act, not amounting to a felony." (Pen. Code, § 192.5, subds. (a)-(d).) The phrase "unlawful act," as used in the manslaughter statute, has traditionally been interpreted as an act which is dangerous to human life or safety and which meets the conditions of Penal Code section 20. (*People* v. *Stuart* (1956) 47 Cal.2d 167, 173 [302 P.2d 5, 55 A.L.R.2d 705]; *People* v. *Wong* (1973) 35 Cal.App.3d 812, 829 [111 Cal.Rptr. 314].) Penal Code section 20, in turn, requires that "[i]n every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence." Because the issue is not presented in this case, we have no occasion to determine whether the unlawful act in this new manslaughter statute may consist of a violation of an appropriate boating regulation adopted by the Department of Boating and Waterways.

section 6 expressly declares in relevant part that "[n]o act or omission . . . is criminal or punishable, except as prescribed or authorized by this code, . . . or by some ordinance, municipal, county, or township regulation . . . ." Consequently, there is no common law crime in this state. (*Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420].) ▪ " 'In order that a public offense be committed, some statute, ordinance or regulation prior in time to the commission of the act, must denounce it . . . .' " (*Id.*, at p. 632 quoting *People* v. *Whipple* (1929) 100 Cal.App. 261, 262 [279 P. 1008].) But when common law crimes have been incorporated into our penal statutes, "recourse may be had to the common law to determine the nature and character of the offense." (*In re Harder* (1935) 9 Cal.App.2d 153, 155 [49 P.2d 304].) Moreover, subject to constitutional constraints, the Legislature may define a crime as it sees fit and hence may depart from the traditional common law definition of that crime. (*People* v. *Knowles* (1950) 35 Cal.2d 175, 181-182 [217 P.2d 1].) Thus, it is conceivable that the Legislature might have intended that the statutory phrase "duty imposed by law" encompass duties imposed by the common law of negligence. But nothing suggests that is the case. ▪ As the high court emphasized in *Keller*, "[a]lthough the Penal Code commands us to construe its provisions 'according to the fair import of their terms, with a view to effect its objects and to promote justice' (Pen. Code, § 4), it is clear the courts cannot go so far as to create an offense by enlarging a statute, by inserting or deleting words, or by giving the terms used false or unusual meanings. Penal statutes will not be made to reach beyond their plain intent; they include only those offenses coming clearly within the import of their language. Indeed, 'Constructive crimes—crimes built up by courts with the aid of inference, implication, and strained interpretation—are repugnant to the spirit and letter of English and American criminal law.' " (2 Cal.3d at p. 632; citations omitted.) ▪ Given this injunction and the absence of any legislative history suggesting otherwise, we conclude that the term "law" as used in the statutory phrase "any act forbidden by law, or neglect any duty imposed by law" is limited to statutes, regulations or other enactments of a legislative or regulatory body which forbid acts by, or impose duties upon, the operator of a vessel for the preservation of the safety of its occupants.

B. *Acts and Duties Under the Statute.*

▪ Although we reject the Attorney General's argument that the common law duty to use due care is sufficient under the statute, we do agree that in other respects the felony drunk-driving statute mirrors the drunk boating provision and to that extent these two statutes should be construed in consistent and harmonious fashion. (See *Building Material & Construc-*

*tion Teamsters' Union* v. *Farrell* (1986) 41 Cal.3d 651, 665 [224 Cal.Rptr. 688, 715 P.2d 648].) Former Harbors and Navigation Code section 655, subdivision (c), quoted in full in the margin, closely parallels the felony-drunk driving provisions of the Vehicle Code.[6] (See Veh. Code, § 23153, subd. (a). See also former Veh. Code, § 23101, subd. (a), Stats. 1978, ch. 790, § 3.5, p. 2531.) Both statutes require, in addition to the driving or operating of the specified vehicle while under the influence of intoxicating liquor, that the defendant commit an act forbidden by law or neglect a duty imposed by law. (Cf. Veh. Code, § 23153, subd. (a) with former Harb. & Nav. Code, § 655, subd. (c).)

Reference to the appellate decisions construing the Vehicle Code felony drunk-driving statute will demonstrate that a wide variety of acts or omissions in violation of that code which proximately cause the injury have been held to be sufficient to support a conviction. Thus, for example, it has been held that the failure to yield the right of way to a pedestrian (Veh. Code, § 21950, subd. (a)), or alternatively the failure to use due care for a pedestrian's safety (Veh. Code, § 21954, subd. (b)) are sufficient. (*People* v. *Walker* (1968) 266 Cal.App.2d 562, 568-569 [72 Cal.Rptr. 224].) It was also sufficient where the evidence showed the defendant drove his vehicle faster than was reasonably proper in the circumstances and thus violated the basic speed law (Veh. Code, § 22350). (*People* v. *Lares* (1968) 261 Cal.App.2d 657, 665 [68 Cal.Rptr. 144].) Evidence was similarly held sufficient where it appeared the defendant struck a pedestrian who was walking on the right side of the road off of the pavement, and the law permitted driving in such an area only when it could be done safely (Veh. Code, §§ 22107, 21650, subd. (f)). (*People* v. *Smylie* (1963) 217 Cal.App.2d 118, 120-121 [31 Cal.Rptr. 360].) It was also sufficient that the defendant knowingly operated his car with defective brakes. (*People* v. *Campbell* (1958) 162 Cal.App.2d 776, 782 [329 P.2d 82].) A conviction for felony drunk driving was affirmed where it appeared the defendant drove her vehicle when the windshield was in a dirty condition so as to cause poor visibility (former Veh. Code, § 667; now § 26710). (*People* v. *Graybehl* (1944) 67 Cal.App. 2d 210, 214, 216 [153 P.2d 771].) And, it was held sufficient that the evidence showed the defendant "was recklessly driving along Sunset Boulevard, zig-zagging from side to side . . . ." (*People* v. *Dawes* (1940) 37 Cal.App.2d 44, 49 [98 P.2d 787].) This established that while intoxicated the defendant drove with a wilfull and wanton disregard for the safety of persons or property (former Veh. Code, § 505), and failed to follow the car he struck at a reasonable and safe

---

[6]Vehicle Code section 23153, subdivision (a) provides: "It is unlawful for any person, while under the influence of an alcoholic beverage or any drug, or under the combined influence of an alcoholic beverage and any drug, to drive a vehicle and, when so driving, do any act forbidden by law or neglect any duty imposed by law in the driving of the vehicle, which act or neglect proximately causes bodily injury to any person other than the driver."

distance under the circumstances (former Veh. Code, § 531, subd. (a)). (*Ibid.*)

The lesson to be drawn from this line of authority is that any act prohibited by law and any neglect of a duty imposed by law relating to boating safety, "which act or neglect proximately causes death or serious bodily injury to any person other than himself" is sufficient to constitute the crime of felony drunk boating. (Former Harb. & Nav. Code, § 655, subd. (c).)

Both the boating regulations adopted by the Department of Boating and Waterways and the Harbors and Navigation Code itself prohibit the operation of a boat at an unsafe speed or in a reckless or negligent manner. First, section 6615 of title 14 of the California Administrative Code requires vessels to be operated at a safe speed. That regulation reads in pertinent part: "Every vessel shall, at all times, proceed at a safe speed so that she can take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions."[7] Second, operating the boat in a reckless or negligent manner is prohibited by statute. At all relevant times Harbors and Navigation Code section 655, subdivision (a) has provided in relevant part: "No person shall use any boat or vessel or manipulate any water skis, aquaplane or similar device in a reckless or negligent manner so as to endanger the life, limb, or property of any person." All of these prohibitions and duties are imposed by law within the meaning of the statute. ■ By reference to appellate authorities construing the analogous Vehicle Code provisions we conclude that operating a boat at an unsafe speed in violation of section 6615 of title 14 of the California Administrative Code and reckless or negligent boating in violation of Harbors and Navigation Code section 655, subdivision (a) both constitute separate and distinct offenses from drunk boating. (See *People* v. *Lobaugh* (1971) 18 Cal.App.3d 75, 79 [95 Cal.Rptr. 547]; *People* v. *Clenney,*

---

[7]The regulation goes on to provide: "In determining a safe speed, the following factors shall be among those taken into account: [¶] (a) By all vessels: [¶] (1) The state of visibility; [¶] (2) The traffic density including concentration of fishing vessels or any other vessels; (3) The maneuverability of the vessel with special reference to stopping distance and turning ability in the prevailing conditions; [¶] (4) At night, the presence of background light, such as from shores' lights or from back scatter of her own lights; [¶] (5) The state of wind, sea, and current, and the proximity of navigational hazards; and [¶] (6) The draft in relation to the available depth of water. [¶] (b) Additionally, by vessels with operational radar: [¶] (1) The characteristics, efficiency and limitations of the radar equipment; [¶] (2) Any constraints imposed by the radar range scale in use; [¶] (3) The effect on radar detection of the sea state, weather, and other sources of interference; [¶] (4) The possibility that small vessels, ice, and other floating objects may not be detected by radar at an adequate range; [¶] (5) The number, location, and movement of vessels detected by radar; and [¶] (6) The more exact assessment of the visibility that may be possible when radar is used to determine the range of vessels or other objects in the vicinity." (Cal. Admin. Code, tit. 14, § 6615.)

*supra,* 165 Cal.App.2d at pp. 246-247; *People* v. *Dawes, supra,* 37 Cal.App.2d at p. 49. See also *People* v. *Marshall* (1957) 48 Cal.2d 394, 398, fn. 3 [309 P.2d 456].) A person may operate a boat carefully and slowly even though he is intoxicated. (*Ibid.*) Accordingly, operating a boat while intoxicated does not automatically make the operator guilty of reckless or negligent boating, or of operating a vessel at an unsafe speed. And neither of these offenses constitute a lesser included offense within drunk boating. (*Ibid.*) It follows then that proof that the defendant caused injury by operating a boat in a reckless and negligent manner, or at an unsafe speed, while he was intoxicated will support a conviction for felony drunk boating. (See *People* v. *Dawes, supra,* 37 Cal.App.2d at p. 49.)

The fact that reckless boating is prohibited in the same section as felony drunk boating is a merely a matter of organization of the code; it makes no substantive difference whether the forbidden act is contained in a separate section as reckless vehicular driving is (Veh. Code, § 23103) or whether the forbidden act is proscribed in another subdivision in the same section. What is critical is that the act be forbidden by law or the duty be imposed by law and that some forbidden act or breach of duty, other than operating a boat while under the influence of intoxicating liquor, occur which proximately causes the injury or death.

## C. *Sufficiency of Evidence.*

With these authorities in mind we look to the Harbors and Navigation Code and the boating regulations adopted pursuant to it to determine whether the evidence supports the finding that defendant did an act forbidden by law or neglected a duty imposed by law in operating his boat.[8] In considering this issue we adhere to the well-established rule of appellate review of the sufficiency of the evidence. ■ Under that rule we must view the whole record in a light most favorable to the judgment to determine whether it contains evidence by which a reasonable trier of fact could have found defendant guilty beyond a reasonable doubt. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].)

---

[8] In fact, regulation of boating may be performed by federal, state, or local authorities, who have overlapping jurisdiction. (See, e.g., The Commercial Fishing Industry Vessel Act, 46 U.S.C. § 2101 et seq; The Recreational Boating Safety Act of 1986, 46 U.S.C. § 13101 et seq. See generally 10 Cal.Jur.3d, Boats and Boating, § 4, pp. 421-422.) Since we conclude the evidence supports a finding that defendant violated state boating statute and regulations it is not necessary to inquire whether he also violated federal or local regulations. It is also unnecessary to determine whether a violation of a federal or local law or regulation would be sufficient to support a charge of felony drunk boating in the absence of a violation of state law.

■ Given this standard, defendant's evidentiary challenge must fail. The evidence establishes that at about 3 a.m., and while he was drunk, defendant operated his boat without lights at a very high rate of speed in an erratic and zig-zagging manner until he capsized it. This evidence supports the finding that defendant not only operated his boat while intoxicated, but that he operated his boat at an unsafe speed and in a reckless or negligent manner so as to endanger the life, limb or property of other persons. (Harb. & Nav. Code, § 655, subd. (a); Cal. Admin. Code, tit. 14, § 6615.) In doing so defendant did an act forbidden by law, or neglected a duty imposed by law, in the operation of his boat. (former Harb. & Nav. Code, § 655, subd. (c).) This evidence supports defendant's conviction.[9]

## II

■ Defendant next contends his actions were not the proximate cause of the death of the victim. In order to be guilty of felony drunk boating the defendant's act or omission must be the proximate cause of the ensuing

---

[9] Although it is unnecessary to resolve the issue in light of this conclusion, we have substantial doubt that the conviction could be sustained as the Attorney General argues on the basis of a violation of the regulations governing buoyant cushions and other floatation devices. Departmental regulations prohibit the use of a recreational boat less than 16 feet in length unless at least 1 personal flotation device for each person is on board. (Cal. Admin. Code, tit. 14, §§ 6565.5-6565.9.) Defendant had no such devices on his boat. The injury in this case, death by drowning, is precisely the type of injury that these regulations were intended to prevent. But whether the lack of a flotation device proximately caused the victim's death is another matter. The prosecution has the burden of proving proximate cause beyond a reasonable doubt, just as it has the burden of proving every other material element of the crime. (*People* v. *Scola* (1976) 56 Cal.App.3d 723, 726 [128 Cal.Rptr. 477].) This burden is met if it produces evidence from which it may reasonably be inferred that defendant's failure to equip his boat with flotation devices was a substantial factor in producing the victim's death. (*Ibid.*) On review, that question translates into the further one of whether a reasonable trier of fact could have drawn that inference beyond a reasonable doubt. (*People* v. *Johnson*, *supra*, 26 Cal.3d at p. 578.) We have grave doubts about that inference here. First of all, the record is completely silent about the relationship between this accident and the lack of a flotation device. Thus, it is wholly speculative whether the victim could have located a flotation device, had there been one, after the boat flipped over in the river in the middle of the night. The victim was drunk and obviously panic stricken. It is implausible to think that the victim would have groped around the boat in search of a flotation device. Nor it is probable that the victim left the capsized boat because no such device was on board. So far as the record shows, the boat was not sinking and thus the victim's decision to leave it and swim to shore could not have been prompted by the fact that he was perilously clinging to a sinking boat without a flotation device. One may speculate that had a flotation device been on board and had the victim been able to find it before he set off to swim ashore, he might not have drowned. But that is mere speculation and a reasonable fact finder could not draw an inference from such a conjecture. (See, e.g., *Jones* v. *Superior Court* (1979) 96 Cal.App.3d 390, 395-396 [157 Cal.Rptr. 809]; *People* v. *Schuber* (1945) 71 Cal.App.2d 773, 776-777 [163 P.2d 498].)

injury or death. (Harb. & Nav. Code, § 655, subd. (a).) Defendant asserts that after his boat flipped over he and the victim were holding on to it and the victim, against his advice, decided to abandon the boat and try to swim to shore. According to defendant the victim's fatally reckless decision should exonerate him from criminal responsibility for his death.

We reject defendant's contention. ■ The question whether defendant's acts or omissions criminally caused the victim's death is to be determined according to the ordinary principles governing proximate causation. (*People* v. *Harris* (1975) 52 Cal.App.3d 419, 427 [125 Cal.Rptr. 40]; see also 1 Witkin, Cal. Crimes (1963) § 78, p. 79.) Proximate cause of a death has traditionally been defined in criminal cases as "a cause which, in natural and continuous sequence, produces the death, and without which the death would not have occurred." (CALJIC Nos. 8.55 (1987 rev.), 8.93 (1987 rev.); *People* v. *Ross* (1979) 92 Cal.App.3d 391, 404 [154 Cal.Rptr. 783].) Thus, as Witkin notes, "[p]roximate cause is clearly established where the act is directly connected with the resulting injury, with no intervening force operating." (1 Witkin, Cal. Crimes, *supra,* § 79, p. 79.)

■ Defendant claims that the victim's attempt to swim ashore, whether characterized as an intervening or a superseding cause, constituted a break in the natural and continuous sequence arising from the unlawful operation of the boat. The claim cannot hold water. ■ It has long been the rule in criminal prosecutions that the contributory negligence of the victim is not a defense. (*People* v. *Harris, supra,* 52 Cal.App.3d at p. 426; *People* v. *Tracy* (1962) 199 Cal.App.2d 163, 168 [18 Cal.Rptr. 487]; *People* v. *Freudenberg* (1953) 121 Cal.App.2d 564, 583-584 [263 P.2d 875]; *People* v. *Lett* (1947) 77 Cal.App.2d 917, 921 [177 P.2d 47]; *People* v. *Fator* (1936) 14 Cal.App.2d 403, 404 [58 P.2d 402].)[10] In order to exonerate a defendant the victim's conduct must not only be a cause of his injury, it must be a superseding cause. "A defendant may be criminally liable for a result directly caused by his act even if there is another contributing cause. If an intervening cause is a normal and reasonably foreseeable result of defendant's original act the intervening act is 'dependent' and not a superseding cause, and will not relieve defendant of liability." (*People* v. *Harris, supra,* 52 Cal.App.3d at p. 427.) As Witkin further notes, "[a]n obvious illustration of a dependent cause is the victim's attempt to escape from a deadly attack or other danger in which he is placed by the defendant's wrongful act." (1 Witkin, Cal. Crimes, *supra,* § 82, p. 81.) Thus, it is only an unforeseeable intervening cause, an extraordinary and abnormal occurrence,

---

[10]This rule is encapsulated in a standard jury instruction: "It is not a defense to a criminal charge that the deceased or some other person was guilty of negligence, which was a contributory cause of the death involved in the case." (CALJIC No. 8.56 (1979 rev.).)

which rises to the level of an exonerating, superseding cause. (*People* v. *Hebert* (1964) 228 Cal.App.2d 514, 520-521 [39 Cal.Rptr. 539]; see also *People* v. *Sam* (1969) 71 Cal.2d 194, 210-211 [77 Cal.Rptr. 804, 454 P.2d 700].) Consequently, in criminal law a victim's predictable effort to escape a peril created by the defendant is not considered a superseding cause of the ensuing injury or death. (*People* v. *Harrison* (1959) 176 Cal.App.2d 330, 335 [1 Cal.Rptr. 414]. See also *People* v. *Monk* (1961) 56 Cal.2d 288, 296 [14 Cal.Rptr. 633, 363 P.2d 865]; *People* v. *Lewis* (1899) 124 Cal. 551, 555 [57 P. 470].) As leading commentators have explained it, an unreflective act in response to a peril created by defendant will not break a causal connection. In such a case, the actor has a choice, but his act is nonetheless unconsidered. "When defendant's conduct causes panic an act done under the influence of panic or extreme fear will not negative causal connection unless the reaction is wholly abnormal." (Hart & Honorè, Causation in the Law (2d ed. 1985) p. 149.)

 Here defendant, through his misconduct, placed the intoxicated victim in the middle of a dangerous river in the early morning hours clinging to an overturned boat. The fact that the panic-stricken victim recklessly abandoned the boat and tried to swim ashore was not a wholly abnormal reaction to the perceived peril of drowning. Just as "[d]etached reflection cannot be demanded in the presence of an uplifted knife" (*Brown* v. *United States* (1921) 256 U.S. 335, 343 [65 L.Ed. 961, 963, 41 S.Ct. 501], Holmes, J.), neither can caution be required of a drowning man. Having placed the inebriated victim in peril, defendant cannot obtain exoneration by claiming the victim should have reacted differently or more prudently. In sum, the evidence establishes that defendant's acts and omissions were the proximate cause of the victim's death.

## III

██ ██ ██ ██ Defendant finally contends the corpus delicti was not established.[11] ██ The corpus delicti rule prevents a defendant

---

[11] Defendant's claim is that the corpus delicti was not established before his extrajudicial statements were received into evidence. The rule requires the corpus delicti be established by prima facie evidence independent of the defendant's admissions and confessions. While it is frequently said that the corpus delicti should be established before the admissions and confessions are received into evidence, a trial court has discretion over the order of proof and may receive extrajudicial statements subject to proof of the corpus delicti. (Evid. Code, § 320; *People* v. *Cancimilla* (1961) 197 Cal.App.2d 242, 249-250 [17 Cal.Rptr. 498].) Defendant cannot object to the order of proof in this case. He stipulated to submission of the matter on the transcript of the preliminary hearing and the suppression motion. The order of proof was "frozen" in those records and by stipulating to the submission of the case on those records defendant necessarily stipulated to that order of proof. Defendant has thus waived any objec-

from being convicted of a crime on the basis of his extrajudicial confessions or admissions alone. (*People* v. *Manson* (1977) 71 Cal.App.3d 1, 41-42 [139 Cal.Rptr. 275]; see generally, 1 Witkin, Cal. Crimes, *supra*, §§ 88-92, pp. 84-89.) It requires therefore that "the corpus delicti of a crime must be proved independent of the accused's extrajudicial admissions." (*People* v. *Alcala* (1984) 36 Cal.3d 604, 624 [205 Cal.Rptr. 775, 685 P.2d 1126].) This means that independent of the accused's extrajudicial confessions or admissions the People must introduce evidence that a crime was committed by someone. (*In re Robert P.* (1981) 121 Cal.App.3d 36, 39 [175 Cal.Rptr. 252]; *People* v. *Manson, supra*, 71 Cal.App.3d at pp. 41-42.) The corpus delicti consists of proof of an injury, loss or harm and that a criminal agency caused them to exist. (*Ibid.*) It is not necessary to show that the defendant was the actor. (*Ibid.*) And, proof of the corpus delicti need not be beyond a reasonable doubt; a "slight or prima facie showing, permitting the reasonable inference that a crime was committed, is sufficient." (*People* v. *Alcala, supra*, 36 Cal.3d at pp. 624-625.) Consequently, the independent proof may be entirely by circumstantial evidence. (*Ibid.* See also *People* v. *Manson, supra*, 71 Cal.App.3d at p. 25; *People* v. *Dawes, supra*, 37 Cal.App.2d at p. 48.) "If the independent proof meets this threshold requirement, the accused's admissions may then be considered to strengthen the case on all issues." (*People* v. *Alcala, supra*, 36 Cal.3d at p. 625.)

 We find ample proof of the corpus delicti here. Defendant and the victim were drinking together on the night of the accident and they were observed leaving the bar together. Both men were drunk. A boat was later seen with two boisterous men on board being operated at an unsafe speed and in a reckless and negligent manner. The inference is overwhelming that the observed boat belonged to defendant. Since both men were drunk it was immaterial which one of them was actually operating the boat at the time of the accident. In all events, it was being operated in an illegal manner hy someone who was drunk. (See *People* v. *Ellena* (1924) 67 Cal.App. 683, 686 [228 P. 389]; cf. *People* v. *Nelson* (1983) 140 Cal.App.3d Supp. 1, 3-4 [189 Cal.Rptr. 845].) Thus, the crime of drunk boating was committed by someone. (Harb. & Nav. Code, § 655, subds. (b), (c).) Shortly before the accident the boat was still being operated in such an erratic manner that it came to the notice of several persons near the river. The victim drowned after the accident. Defendant was later observed soaking wet and intoxicated near the river shortly after the accident. His boat was recovered on the side of

tion to the order of proof. Nevertheless, he may still raise issues concerning the sufficiency of the evidence. (*People* v. *Rowland* (1982) 134 Cal.App.3d 1, 5-6 [184 Cal.Rptr. 346].) We therefore view defendant's contention as an assertion that the corpus delicti was not established.

the river, swamped with water. These circumstances established a prima facie case that the victim's death was the result of a criminal agency, albeit a negligent rather than intentional one. Consequently, the corpus delicti of the crime of drunk boating causing death was sufficiently shown.

The judgment is affirmed.

Evans, Acting P. J., and Blease, J., concurred.