Filed 11/29/18

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C082144 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF144858) |
| v. | |
| SANDRA ALICIA BONILLA et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Yolo County, David W. Reed, Judge.  Affirmed.

Cyrus Zal, Retained Counsel for Defendants and Appellants.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and F. Matt Chen, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendants Sandra Bonilla, Guillermo Bonilla Chirinos, and Juan Bonilla Chirinos[1] appeal from jury verdicts finding each of them guilty of felony vandalism. Defendants argue they received ineffective assistance of counsel[2] because their trial counsel: (1) failed to raise Commercial Code section 9609 and other statutes as a defense to the vandalism charge; (2) failed to clarify the vandalism jury instruction after the jury asked which items were part of the charge; and (3) should have introduced Guillermo's telephone records to support Guillermo's credibility at trial. They further argue the trial court abused its discretion by denying their: (1) request for a new trial based on newly discovered evidence; and (2) motion requesting the trial court reduce their felony convictions to misdemeanors and not impose custody time. Finding no merit in these contentions, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Defendants' arguments on appeal do not require a detailed recitation of the evidence or of the trial. We summarize the background facts here and incorporate any facts relevant to their contentions in the pertinent parts of the Discussion.

Sandra's April 2013 payment to Travis Credit Union for her car loan was returned due to insufficient funds. The credit union left three messages between May 7 and May 9, notifying Sandra she was delinquent. In fact, the credit union's records erroneously showed the payment was 56 to 59 days late, when it was actually 26 days late. Had the system correctly identified the payment was 26 days late, the credit union would not have proceeded with repossession. However, on May 10, the credit union ordered Absolute Adjustment to repossess the car and left Sandra another message.

---

[1] Due to the common last names, we refer to the respective defendants by their first names.

[2] Defendants were represented by the same attorney at trial.

2

Absolute Adjustment sent Daniel Thomas to repossess the car.[3] Thomas arrived at the house around 8:30 a.m. or 9:00 a.m., backed his repossession truck up to Sandra's car, and used the boom on his truck to lift the back of the car in the air. He then attached dollies (a device that acts as a brace around the tires to allow the tires to roll) to the car's front wheels and secured the car to his truck with four ratcheted straps. Although Thomas could have left with the car, Thomas walked to the house and knocked on the front door to give Sandra an opportunity to remove her personal property from the car and to gain access to the car to tie the steering wheel down. When no one answered, Thomas returned to his truck.

Guillermo opened the front door and approached Thomas asking, "[w]hat's going on?" Thomas replied the car was being repossessed for lack of payment. Sandra joined the conversation while Guillermo argued with Thomas. Sandra also protested the repossession. When Guillermo told Thomas, "you're not taking that vehicle," Thomas called the police. While Thomas was waiting for the police to arrive, Juan joined Sandra and Guillermo, and Juan and Guillermo started to remove the straps from the car. Thomas raised the car higher in the air and pulled on the strap Guillermo was trying to remove. In the process of pulling on the strap, Thomas bumped into Guillermo's shoulder. Juan walked over, put Thomas in a chokehold, and threw him off the strap away from the car.

Thomas got into his truck and spoke with the police dispatcher.[4] Juan removed one of the straps and Guillermo cut another with pruning shears. Juan and Guillermo then removed the dollies from the front tires and Sandra climbed into the car. Sandra drove the car off the boom, slamming the car about three feet onto the ground. Thomas

---

[3] A video of the incident recorded by cameras attached to Thomas's truck was played for the jury.

[4] A recording of the police dispatch call was played for the jury.

3

lowered the boom to lift the car again, but was unable to do so because Juan was standing on the boom. Sandra drove over the boom and the dollies and then drove away.

Thomas drove down the street and around the corner to wait for the police. He did not take the dollies because he did not feel safe getting out of the truck. An officer arrived about ten minutes later and followed Thomas back to the house. The dollies were no longer in front of the house and were never recovered. No one responded when the police knocked on the front door to the house.

A jury found Guillermo, Juan, and Sandra guilty of vandalism and found the damages of the vandalism were in the amount of $400 or more. Defendants appeal.

DISCUSSION

I

*Trial Counsel Was Not Ineffective*

"To show ineffective assistance of counsel, defendant has the burden of proving that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different." (*People v. Kelly* (1992) 1 Cal.4th 495, 519-520.) " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " (*People v. Bolin* (1998) 18 Cal.4th 297, 333.)

We presume counsel's conduct fell within the "wide range of reasonable professional assistance." (*People v. Maury* (2003) 30 Cal.4th 342, 389.) Our review is limited to the record on appeal and we must reject a claim of ineffective assistance "if the record sheds no light on why counsel acted or failed to act in the manner challenged unless (1) counsel was asked for and failed to provide a satisfactory explanation or (2) there simply could be no satisfactory explanation." (*People v. Burgener* (2003) 29 Cal.4th 833, 880.) If "it is easier to dispose of an ineffectiveness claim on the ground of lack of prejudice . . . that course should be followed." (*Strickland v. Washington* (1984) 466 U.S. 668, 697 [80 L.Ed.2d 674, 699].)

4

Defendants have not met their burden of showing ineffective assistance of counsel on any of the grounds raised.

A

*None Of The Statutes Cited By Defendants Provides A Defense To Felony Vandalism*

Defendants' primary argument is that trial counsel was ineffective for failing to raise Commercial Code section 9609 as a defense at trial. Commercial Code section 9609, subdivisions (a)(1) and (b)(2), provide that, "[a]fter default, a secured party may . . . [¶] [t]ake possession of the collateral [¶] . . . [¶] [w]ithout judicial process, if it proceeds without breach of the peace." Defendants argue "[a]s soon as [defendants] strongly protested the attempted repossession and a breach of the peace resulted, Commercial Code §9609 *required* Thomas to stop proceeding with the repossession, and any further attempts by Thomas to proceed with the repossession at that point became unlawful acts by Thomas, and Thomas proceeded at his own risk to himself and to his property." Defendants maintain Commercial Code section 9609 thus "provides a complete defense to their convictions for felony vandalism, warranting the outright dismissal of those convictions."

The People argue defendants' claim is more appropriately addressed in a habeas corpus proceeding because trial counsel's reasons for not pursuing the defense is not reflected in the record, and the code provision is inapplicable because the repossession was completed, as defined in Business and Professions Code section 7507.12,[5] before Thomas contacted defendants. We conclude Commercial Code section 9609 has no

---

[5] Consistent with Business and Professions Code section 7507.12, the trial court instructed the jury: A "[r]epossession is complete if . . . the collateral becomes connected to a tow truck or the repossessor's tow vehicle." In their reply brief, defendants for the first time, argue the instruction was improper and misled the jury to defendants' prejudice. This argument is deemed forfeited for failure to raise it in the opening brief. (*People v. Tully* (2012) 54 Cal.4th 952, 1075.)

application to the criminal charge of felony vandalism at issue here. As such, we do not address the parties' remaining contentions.

We note the Legislature did not expressly provide that a violation of Commercial Code section 9609 is a defense to a criminal charge of vandalism under Penal Code section 594. In the absence of express statutory language, we find no basis to read in such a defense and defendants cite no authority for doing so. (See *People v. Berry* (1991) 1 Cal.App.4th 778, 788 [finding civil statute inapplicable to criminal case because "nothing in th[e] civil statute suggest[ed] that it creates a defense in a criminal action"].) We further note the remedies for a violation of Commercial Code section 9609 are delineated in Commercial Code section 9625. Defendants' conduct to retrieve the car was conspicuously not one of the *lawful* remedies listed in the Commercial Code.

Even if Thomas's conduct violated the Commercial Code provision, however, defendants cite no authority permitting them *to commit a crime* in response to an unsanctioned repossession that results in a breach of the peace. By defendants' rationale, a person cannot be held criminally responsible for his or her malicious acts when the acts are committed in response to a violation of a civil statute. This is not the law. The conduct of which defendants complain was simply irrelevant to their criminal liability for their own conduct. "It has long been the rule in criminal prosecutions that the contributory negligence of the victim is not a defense." (*People v. Armitage* (1987) 194 Cal.App.3d 405, 420; see also *People v. Harris* (1975) 52 Cal.App.3d 419, 427 ["A defendant may be criminally liable for a result directly caused by his act even if there is another contributing cause"].)

For the same reasons, Civil Code section 1714, subdivision (a) (everyone is responsible for injury caused to another unless that person "brought the injury upon himself or herself") and Civil Code section 1667 (dealing with unlawful contracts) are inapplicable to the criminal felony vandalism charges at issue here.

6

Defendants' reliance on Penal Code section 415 is also misplaced. They argue Thomas violated Penal Code section 415 by "start[ing] an unlawful fight in public" and his actions constitute a defense to the vandalism charge. Thomas was not charged with such a crime and, in any event, comparative fault is not a defense in criminal proceedings. (*People v. Armitage*, *supra*, 194 Cal.App.3d at p. 420.) Accordingly, there was no ineffective assistance of counsel. (See *People v. Price* (1991) 1 Cal.4th 324, 387 [defense counsel is not required to make frivolous objections].)

B

*Trial Counsel Was Not Ineffective For Failing To Clarify The Vandalism Jury Instruction*

During deliberations, the jury asked: "What items are included in the vandalism charge?" The trial court discussed the question with counsel, inviting argument regarding the appropriate response. The prosecution asked the trial court to identify the items for the jury, while defense counsel argued it was the "burden of the prosecution to prove what those items [were]" and, therefore, it was "up to the jury to decide, based on the testimony and the evidence presented, what those items [were]." The trial court instructed the jury: "You must decide what, if any, property was vandalized. See Instruction[s] 2900 & 2901."

Defendants argue trial counsel "should have followed up and made sure the jury understood the jury instructions before the jury returned a verdict." They claim their trial counsel was ineffective for doing so. The People argue the "record demonstrates that counsel's conduct was the result of a tactical and reasonable choice." We agree with the People.

Defendants' trial counsel argued it was up to the jury to decide which items, if any, the prosecution proved were included in the vandalism charge, and the trial court instructed the jury that it was the jury's duty to make that factual determination and referred the jury back to the jury instructions. The pertinent part of CALCRIM No. 2900, as read to the jury, provides: "To prove that a defendant is guilty of [vandalism], the

People must prove that:  [¶]  1. The defendant maliciously damaged personal property; [¶]  2. The defendant did not own the property; [¶]  AND [¶]  3. The amount of damage caused by the vandalism was $400 or more."  CALCRIM No. 2901 provides:  "If you find the defendants guilty of vandalism . . . you must then decide whether the People have proved that the amount of damage caused by the vandalism was $400 or more." These instructions provided a complete and accurate statement of the governing law to the jury, and defendants do not discuss how trial counsel should have sought to clarify these instructions, or how such clarification would have resulted in "a reasonable probability that, but for counsel's unprofessional errors, the result would have been different." (*People v. Kelly*, *supra*, 1 Cal.4th at p. 520.)

Further, " '[i]n the usual case, where counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions.' " (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1051.)  The record reveals at least one tactical reason for not providing additional guidance to the jury.  The jury's question indicated the jury was confused as to which items formed the basis for the vandalism charge.  By leaving the jury to its own devices based on the existing instructions, defendants' counsel could have believed he was increasing defendants' chance of an acquittal or hung jury because the question suggested there was a disagreement on what items, if any, the prosecution proved were vandalized.  Thus, the record on this appeal does not establish ineffective assistance of counsel.

C

*Trial Counsel Was Not Ineffective For Failing To Introduce Guillermo's Phone Records*

At trial, Guillermo testified he called the police four times on the day of the incident and each time he was told they could not help him because it was a civil matter. During the prosecution's rebuttal, a detective testified that records from the police dispatch center showed Guillermo made three calls to police dispatch on the day of the

8

incident.[6]  During those calls, Guillermo respectively told the dispatcher the repossession agent was chasing his wife and had assaulted him, he was going to the hospital and could not meet with officers at the scene, and later he and Sandra were returning to his business in West Sacramento and were willing to meet the police there.  Guillermo and Sandra became upset when the dispatcher told them to return to the scene for police to take the report, and stated they were "going to sue people."

Defendants argue their "credibility was seriously undermined by their trial counsel's failure to produce as evidence the telephone records of [Guillermo], showing that Guillermo did make four telephone calls to the [police] on the morning of the incident . . . and was told that the repossession was a 'civil' matter and thus no police would be sent."  The People respond that, based on the detective's testimony and the audio recordings of Guillermo's three telephone calls to the police dispatcher, "there was no reason for trial counsel to doubt that the certified transcript included every one of Guillermo's calls."  Further, the People argue defendants failed to demonstrate prejudice because "[w]hether Guillermo called the police four or three times was at best tangential to the issue of his credibility, which was established at least in regards to his testimony that he contacted the police that morning in response to Thomas's actions."

We note defendants presented the same argument to the trial court in their motion for new trial and the trial court found no ineffective assistance of counsel.  The trial judge explained:  "As to the telephone records, no explanation was provided as to why the defendants themselves didn't provide, either to their attorney or to the Court, their own telephone records.  [¶]  It's unclear what the significance of that was, except I guess to support their position that they themselves called the police.  I'm not sure that anybody disputed that.  [¶]  The evidence at the trial was that Mr. Thomas called the police, and

---

[6]     Audio recordings of the calls were also played for the jury.

9

that the police came after the defendants had taken their car off the dollies and left the area. [¶] And so the fact that they did or didn't call the police themselves, in the Court's mind, had little significance, since they chose not to participate when the police came, and could have helped them solve this dispute. [¶] And so the failure to get those records, the Court disagrees that it was critical, and that it was not ineffective assistance of counsel to not present that evidence." The trial court's reasoning in rejecting defendants' ineffective assistance of counsel claim was sound.

On appeal, we note defendants do not argue that Guillermo's telephone records would show that he did, in fact, call the police a fourth time as claimed. Further, defendants provide no information regarding the substance of the alleged fourth call. "We cannot evaluate alleged deficiencies in counsel's representation solely on defendant's unsubstantiated speculation." (*People v. Cox* (1991) 53 Cal.3d 618, 662, overruled on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.) Accordingly, defendants have failed to carry their burden of proving ineffective assistance of trial counsel. (*People v. Kelly*, *supra*, 1 Cal.4th at pp. 519-520.)

II

*The Trial Court Did Not Abuse Its Discretion*

A

*Denial Of The Motion For New Trial Was Proper*

A court may grant a new trial "[w]hen new evidence is discovered material to the defendant, and which he could not, with reasonable diligence, have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given . . . ." (Pen. Code, § 1181, case 8.) "A trial court has broad discretion in ruling on a motion for new trial, and there is a strong presumption that it properly exercised that discretion." (*People v. Davis* (1995) 10 Cal.4th 463, 524.) We review the trial court's denial of a motion for

10

new trial for abuse of discretion.  (See *People v. Knoller* (2007) 41 Cal.4th 139, 156.)  In doing so, "[w]e accept the trial court's credibility determinations and findings on questions of historical fact if supported by substantial evidence."  (*People v. Nesler* (1997) 16 Cal.4th 561, 582.)

In ruling on a motion for new trial based on newly discovered evidence, the trial court considers the following factors:  (1) the evidence, and not simply its materiality, is newly discovered; (2) the evidence is not merely cumulative; (3) the defendant in the exercise of reasonable diligence could not have discovered and produced the evidence at trial; (4) the newly discovered evidence is of such strength that a result more favorable to the defendant is probable if the new evidence is admitted on retrial; and (5) these facts are shown by the best evidence of which the case admits.  (*People v. Howard* (2010) 51 Cal.4th 15, 43.)  "In addition, 'the trial court may consider the credibility as well as materiality of the evidence in its determination [of] whether introduction of the evidence in a new trial would render a different result reasonably probable.' "  (*People v. Delgado* (1993) 5 Cal.4th 312, 329.)

In support of their motion for a new trial, defendants introduced the declaration of a witness formerly employed by Guillermo, in which the witness testified it was "his normal custom and practice to go to [Guillermo's] residence each Saturday morning to deliver papers to [Guillermo] at his residence," he witnessed the altercation on that day, and "saw the repossession person placing the dollies from the driveway into his tow truck."  The former employee further stated Guillermo had called him about five weeks prior to ask whether he had driven by Guillermo's residence on the day of the incident, and he had not discussed his observations with Guillermo prior to that date.  Defendants introduced no evidence as to why Guillermo could not have contacted the former employee before trial.

11

During the hearing on the motion, the trial judge said: "I find it somewhat interesting that nearly three years after the incident, all of the sudden the defendants find a witness [who] happened to see, or claims to have seen, certain things very similar to what another witness, who the Defense chose not to put on, allegedly observed as well. [¶] The Defense doesn't explain what prompted discovery of this new evidence, even though the person was a coworker or employee of one of the defendants, would have been -- by their own witness['s] statements, would have been expected to make contact with the defendant on the day of the incident, and presumably did make contact with the defendant shortly [after] that, as that was part of his employment. I did not find that information compelling. [¶] . . . [¶] I do not find that the Defense has met their burden of proof that they could not have discovered this evidence with reasonable diligence. [¶] I'm not persuaded that this information would have affected the outcome as to the vandalism. In the Court's mind, there was strong evidence that a vandalism occurred, and there was video evidence to support that conclusion."

This reasoning was sound based on the evidence before the court and, therefore, the trial court's order denying a new trial will not be disturbed on appeal. (*People v. Delgado*, *supra*, 5 Cal.4th at p. 328.) Defendants failed to meet their burden of establishing "newly discovered" evidence within the meaning of Penal Code section 1108, case 8, because they presented no evidence to support their position that this "witness could not have been discovered with reasonable diligence before the trial," especially given the fact that it was the employee's "normal custom and practice to go to [Guillermo's] residence each Saturday morning to deliver papers to [Guillermo] at his residence."

B

*The Sentencing Decisions Were Within The Trial Court's Discretion*

Defendants filed a motion with the trial court asking the court to exercise its discretion under Penal Code section 17, subdivision (b), to reduce each of their felony

12

convictions to misdemeanors and not to impose custody time as part of their sentences. Defendants argued they "did not have any criminal intent that morning of the incident, and trouble came looking for them instead of defendants going to look for trouble," the incident resulted from "the unfortunate coincidence of mistake and bad luck," and they had not previously been convicted of any criminal offense. The trial court denied defendants' motion. Defendants reassert the same arguments on appeal.[7]

Penal Code section 17, subdivision (b), rests the decision whether to reduce a "wobbler" from a felony to a misdemeanor solely " 'in the discretion of the court.' " (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977.) The relevant criteria in exercising that discretion include " 'the nature and circumstances of the offense, the defendant's appreciation of and attitude toward the offense, or his traits of character as evidenced by his behavior and demeanor at the trial.' " (*Id.* at p. 978.) In denying defendants' motion, the trial judge said: "As to the motion to reduce the vandalism charge to a misdemeanor, in reviewing the evidence from the trial, the Court finds that the conduct of the defendants was unreasonable on the date of the incident, and truly outrageous in the whole context of things. [¶] They chose to use self-help rather than waiting for law enforcement to assist them, and they used self-help and fled, rather than allowing law enforcement to assist them in this. And had they stayed around, law enforcement did arrive, and could have helped them if in fact they were being wrongfully subjected to an illegal repossession. [¶] I do not find that the facts of the case support reducing the charge to a misdemeanor."

---

**7** Defendants also take exception to certain statements in each of their probation reports. We need not address or discuss their contentions in that regard because our review of the trial court's denial of the motion focuses solely on whether the trial court abused its discretion in making that decision. The statements in the probation reports are irrelevant to that inquiry.

"On appeal, two additional precepts operate: 'The burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' [Citation.] Concomitantly, '[a] decision will not be reversed merely because reasonable people might disagree. "An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge." ' " (*People v. Superior Court* (*Alvarez*), *supra*, 14 Cal.4th at pp. 977-978.)

Here, the trial court's motivation for denying defendants' request is clear. The court denied the motion based on the nature and circumstances of the offense -- an appropriate criterion for the trial court's consideration in exercising its discretion. Defendants present no argument showing the court's determination was made "outside the perimeters drawn by individualized consideration of the offense, the offender, and the public interest." (*People v. Superior Court* (*Alvarez*), *supra*, 14 Cal.4th at p. 978.)

Although the trial court did not expressly address defendants' request for no imposition of custody time on the record, the request arose out of the same motion as their request to reduce the felony convictions to misdemeanors, and they asserted the same grounds for both requests. The trial court's reasoning regarding the nature and circumstances of the offense as applied to its denial of the request to reduce the felonies to misdemeanors supports its denial of defendants' request for no custody time as well. It demonstrates the court was aware of its sentencing discretion and conscientiously exercised that discretion. Accordingly, the trial court did not abuse its discretion in denying defendants' request for no custody time. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847 [sentencing decisions are reviewed for abuse of discretion].)

14

## DISPOSITION

The judgments are affirmed.

/s/
Robie, J.

We concur:

/s/
Raye, P. J.

/s/
Hull, J.