[No. C017392. Third Dist. Mar. 29, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
CLAUDE ALEX SCHMIES, Defendant and Appellant.

THE PEOPLE, Plaintiff, v.
CLAUDE ALEX SCHMIES, Defendant.

**[Opinion certified for partial publication.\*]**

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II., III., IV., V. and VI.

**COUNSEL**

K. Douglas Cummings, under appointment by the Court of Appeal, for Defendant and Appellant and for Defendant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Clayton S. Tanaka and David A. Rhodes, Deputy Attorneys General, for Plaintiff and Respondent and for Plaintiff.

**OPINION**

**SPARKS, Acting P. J.**—In this case we consider the question of causation in a criminal case involving police pursuit of a fleeing motorist. The

principal question relates to the admissibility of evidence concerning the reasonableness of the pursuing officers' conduct.

Defendant Claude Alex Schmies fled from an attempted traffic stop and engaged in a high-speed vehicle chase with peace officers. During the chase, one of the pursuing patrol cars struck another car. The driver of the other car was killed and the police officer was injured. Charged with a variety of offenses, defendant was acquitted of second degree murder (Pen. Code, §§ 187, 189) but convicted of vehicular manslaughter with gross negligence (Pen. Code, § 192, subd. (c)(1)) and reckless driving causing great bodily injury (Veh. Code, § 23104, subd. (b)).[1]

Sentenced to a total unstayed sentence of seven years four months, defendant appeals. In the published portion of this opinion we consider and reject the claim that the trial court improperly precluded evidence relating to the reasonableness of the police officers' conduct during the pursuit. In the unpublished portion, we consider defendant's remaining contentions that the court (1) erroneously failed to instruct the jury on the lesser included offense of misdemeanor vehicular manslaughter; (2) misinstructed the jury on the crime of willful flight from a peace officer causing death (Veh. Code, § 2800.3); (3) improperly sentenced defendant on the charge of reckless driving causing great bodily injury; (4) improperly ordered a restitution fine of $1,500 without first determining defendant's ability to pay; and (5) failed to follow statutory procedural prerequisites before ordering defendant to reimburse the county for the costs of counsel. Only this last contention has merit. We shall strike the order requiring payment of counsel fees and, in all other respects, shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

At 4:30 p.m. on October 24, 1992, California Highway Patrol (CHP) Officer Steven Petch was driving southbound on Interstate 5. Another CHP Officer, Christopher Homen, was approximately two-tenths of a mile behind him in another patrol car. Defendant, who was driving a motorcycle, entered the highway and accelerated to a speed of approximately 90 miles per hour. Officer Petch activated his lights for a traffic stop. Defendant slowed down, looked over his shoulder and then sped up.

Officer Petch turned on his flashing lights and siren and radioed to Officer Homen, "Here we go." Officer Petch also notified radio dispatch about the

---

[1] This case was consolidated for trial with two other charges stemming from another high-speed chase. The jury also convicted defendant of those charges, namely, attempting to evade a peace officer while driving recklessly (Veh. Code, § 2800.2) and falsely identifying himself to a peace officer. (Pen. Code, § 148.9.) Because defendant's claims on appeal relate only to the fatal chase, we do not detail the facts surrounding this other incident.

pursuit and, after getting behind the motorcycle and obtaining its license number, asked dispatch to check on the vehicle. The report came back clear: the motorcycle had not been reported stolen, nor were there any outstanding warrants.

The pursuit continued along Interstate 5 at speeds in excess of 90 miles per hour. Officer Petch drove alongside defendant to try to keep him on the freeway. He got a clear look at defendant and the motorcycle.

Defendant cut in front of Officer Petch and took an exit from the freeway. Both Officer Petch and Officer Homen followed in their cars. Officer Petch had turned on all of his emergency lights as well as his siren. Officer Homen did not have overhead lights, but had activated a light on the side of his car and also turned on his siren.

Defendant drove through stop signs and over double yellow lines to weave around cars. He drove through red lights as well. Defendant went at speeds of up to 95 miles per hour, and came perilously close to falling off his motorcycle on sharp turns.

Defendant drove through the intersection of Churncreek and Parsons. Officer Petch followed. A car on Parsons that had been stopped to allow Officer Petch to go through started into the intersection, apparently unaware of the second patrol car driven by Officer Homen. Officer Homen tried to avoid the car but hit it broadside. The driver, Jane Abbett, was killed and Officer Homen was injured.

Defendant drove on, trying to evade Officer Petch. At this point, Officer Petch had pursued defendant for approximately 5.5 miles. Officer Petch was unable to follow when defendant drove down an abandoned road, but saw defendant drive into an apartment complex. Defendant was arrested shortly afterward. He had hidden his motorcycle, helmet and sweatshirt in a wooded area.

Defendant was charged with second degree murder (Pen. Code, §§ 187, subd. (a), 189—count 3),[2] willful flight from a peace officer causing death (Veh. Code, § 2800.3—count 4), vehicular manslaughter with gross negligence (Pen. Code, § 192, subd. (c)(1)—count 5), and reckless driving causing great bodily injury (Veh. Code, § 23104, subd. (b)—count 6). Other

---

[2]As already noted, two counts contained in another information were consolidated for trial with the counts at issue here. A new information was not prepared to consolidate all of the charges. We refer to each offense by the count number utilized by the jury. Counts 1 and 2 related to the other pursuit incident. (See fn. 1, *ante.*)

driving offenses were also alleged (Veh. Code, §§ 12500, subd. (a), 12500, subd. (b), 14601.1, 14601.2), but these charges were not submitted to the jury for determination.

At trial, Officers Petch and Homen described their pursuit of defendant and the crash between Homen and Abbett. Defendant did not testify or offer any evidence. He did, however, stipulate to being the driver of the motorcycle involved in the chase, and further stipulated that he knew his driver's license had been revoked at the time of this incident. As discussed in detail below, defendant argued to the jury that Officer Homen's actions in the pursuit were a superseding intervening act, breaking the chain of causation and relieving defendant of liability for the death of Abbett and the injuries to Officer Homen.

As we have recounted, the jury acquitted defendant of second degree murder but convicted him of vehicular manslaughter with gross negligence. The jury also convicted defendant of reckless driving causing great bodily injury as charged in count 6. This appeal followed.

## DISCUSSION

### I. *Causation Evidence*

At trial, defendant attempted to demonstrate that Officer Homen's actions broke the chain of causation, absolving defendant of responsibility for Abbett's death and Officer Homen's injuries. To this end, defendant tried to obtain a complete copy of the CHP's pursuit policy to learn whether Officer Homen's actions violated CHP guidelines. CHP opposed this request, asserting in part that disclosure of the complete policy would jeopardize officer safety. CHP did, however, release a "sanitized" version of the policy to defendant.

Finding this version of the policy unsatisfactory, defendant renewed his request for complete disclosure. The trial court denied the motion, ruling that the policy was irrelevant to determining whether Officer Homen's actions were reasonably foreseeable.

Similarly, the court refused to permit defendant's expert witnesses to testify as to the reasonableness of the pursuit. The court distinguished the question of foreseeability from the question of reasonableness, and ruled that while defendant could argue that Officer Homen's conduct was not reasonably foreseeable, he could not introduce evidence relating to the reasonableness of Officer Homen's action, an area the court deemed irrelevant to the issues at hand.

On appeal, defendant challenges the trial court's exclusion of evidence of the CHP pursuit policies as well as evidence relating to the reasonableness of the officers' actions.[3] We find no error.

The reasonableness, or lack thereof, of the officers' conduct is not in itself an issue with respect to defendant's offenses. None of the defenses to crimes that depend upon the behavior of others, such as self-defense (Pen. Code, § 197), defense of others (*ibid.*), defense of property (*ibid.*), duress or menace (Pen. Code, § 26, subd. Six), or entrapment (*People* v. *Barraza* (1979) 23 Cal.3d 675, 689-691 [153 Cal.Rptr. 459, 591 P.2d 947]), are even arguably presented here. And, "[i]t has been repeatedly held that contributory negligence is not available as a defense or excuse for crime." (*People* v. *Rodgers* (1949) 94 Cal.App.2d 166, 167 [210 P.2d 71].) The conduct of the victim or other third persons, whether negligent or even criminally proscribed, is not, in itself, a defense to crime. (*People* v. *McGee* (1947) 31 Cal.2d 229, 240 [187 P.2d 706]; *People* v. *Martin* (1894) 102 Cal. 558, 563 [36 P. 952]; *People* v. *Rodgers, supra,* 94 Cal.App.2d at p. 167; *People* v. *Marconi* (1931) 118 Cal.App. 683, 687 [5 P.2d 974].) Nor is the reasonable behavior of other persons in itself an element of defendant's manslaughter offense. (Pen. Code, § 192, subd. (c)(1).) The reasonableness of the officers' conduct is at best an evidentiary matter which can have relevance only to the extent that it tends to prove or disprove an element of the crime or a recognized defense thereto. (Evid. Code, §§ 210, 350, 351.)

The reasonableness of the officers' conduct, as defendant proffered it, would have arguable relevance only with respect to the question of foreseeability of the harm that ensued from defendant's course of conduct. Foreseeability of harm is not itself an element of the offense, but is a recognized factor to be considered in determining whether the defendant acted with gross negligence and, if so, whether his conduct was the proximate or legal cause of the ensuing harm. (See *Ballard* v. *Uribe* (1986) 41 Cal.3d 564, 572-573, fn. 6 [224 Cal.Rptr. 664, 715 P.2d 624].) Defendant focuses on the causation issue as the disputed issue upon which the reasonableness of the officers' conduct is claimed to have had probative value.[4]

The principles of causation apply to crimes as well as torts. (*People* v. *Harrison* (1959) 176 Cal.App.2d 330, 333 [1 Cal.Rptr. 414].) "Just as in

---

[3] At trial, defendant also suggested the decedent's contributory negligence was a superseding intervening cause. That claim is not raised on appeal.

[4] Defendant was charged with, but acquitted of, murder on an implied malice theory. Implied malice requires a subjective awareness of a high probability of death with a wanton disregard thereof. (*People* v. *Nieto Benitez* (1992) 4 Cal.4th 91, 111 [13 Cal.Rptr.2d 864, 840 P.2d 969]; *People* v. *Watson* (1981) 30 Cal.3d 290, 300 [179 Cal.Rptr. 43, 637 P.2d 279].) Implied malice may be distinguished from gross negligence by both the higher degree of the risk involved and by the requirement that the risk be subjectively appreciated rather than

tort law, the defendant's act must be the legally responsible cause (*'proximate cause'*) of the injury, death or other harm which constitutes the crime." (1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Elements of Crime, § 126, pp. 145-146, original italics.) Thus, in the language of the standard jury instruction, to constitute a homicide ". . . there must be, in addition to the death of a human being, an unlawful act which was a cause of that death." (CALJIC No. 8.55 (1992 rev.) Supp. Service pamp. No. 1 (1996).)

But the law, the Supreme Court has noted, " 'defines "cause" in its own particular way.' " (*Mitchell* v. *Gonzales* (1991) 54 Cal.3d 1041, 1053 [1 Cal.Rptr.2d 913, 819 P.2d 872], fn. omitted.) In *Mitchell*, the high court disapproved the use in civil cases of BAJI No. 3.75, the proximate cause instruction containing a "but for" test and instead held that trial courts should use BAJI No. 3.76, the legal cause instruction employing the "substantial factor" test of cause in fact. (54 Cal.3d at p. 1044.) But the *Mitchell* court "emphasize[d] that despite the use of the terms proximate and legal cause, BAJI Nos. 3.75 and 3.76 are instructions on *cause in fact*. Issues that are properly referred to as questions of proximate or legal cause are contained in other instructions. (See, e.g., BAJI No. 3.79 [superseding causes].)" (54 Cal.3d at p. 1044, fn. 2, original italics.) The court also noted that in addition to the issue of causation in fact, numerous issues have at various times been included in the proximate cause rubric, including superseding causes. (*Id.* at p. 1049, fn. 3.)

Shortly thereafter the high court revisited the causation issue, this time in the context of a criminal case. In *People* v. *Roberts* (1992) 2 Cal.4th 271 [826 P.2d 274, 6 Cal.Rptr.2d 276], the court noted that CALJIC No. 8.55 "defining proximate cause contained language virtually identical to that of BAJI No. 3.75 (7th ed. 1986), which we disapproved in *Mitchell* v. *Gonzales* (1991) 54 Cal.3d 1041 [1 Cal.Rptr.2d 913, 819 P.2d 872]. [¶] Of more

---

merely objectively apparent. (*People* v. *Watson, supra,* 30 Cal.3d at p. 296.) In the trial court the defense focused its response to the prosecution's motion *in limine* in large part on the implied malice element of the murder charge. Defendant's acquittal on the murder charge renders implied malice moot and we will confine our consideration of his appellate contention to the offense for which he was convicted.

Defendant's offense of vehicular manslaughter requires gross negligence, which is such a departure from the conduct of an ordinarily prudent person as to be incompatible with a proper regard for human life. (*People* v. *Peabody* (1975) 46 Cal.App.3d 43, 47 [119 Cal.Rptr. 780].) Foreseeability of harm plays a part in this determination (see *Ballard* v. *Uribe, supra,* 41 Cal.3d at p. 573, fn. 6), although in this respect the focus is upon foreseeability of danger to life in a broad or overall sense rather than foreseeability of the particular manner in which death occurred. (See *People* v. *Penny* (1955) 44 Cal.2d 861, 878-880 [285 P.2d 926]; *People* v. *Tophia* (1959) 167 Cal.App.2d 39, 46 [334 P.2d 133].) The more particularized consideration of foreseeability occurs with respect to the proximate or legal cause element of the crime and defendant appropriately directs his appellate argument to this aspect of the case.

concern in this case is our observation in *Mitchell* that the instruction may be grammatically confusing and that the hearer may misunderstand the term or substitute another meaning for it. [Citation.] The civil instruction's infirmity is equally great in criminal cases." (2 Cal.4th at p. 313.)

In *Roberts*, a state prison inmate walked down a corridor as his fellow inmates, including the defendant, lounged against the walls on both sides. He was attacked and emerged with 11 stab wounds that shortly caused his death. The dying inmate grabbed a knife from the floor and pursued one of his assailants up a flight of stairs to the second floor, where he fatally plunged the knife into the chest of a prison guard. (2 Cal.4th at pp. 294-295.) The defendant was charged with the murder of both the inmate and the correctional officer. Although the court found the evidence sufficient for the jury to find that the defendant's act was the proximate cause of the death of the officer, it concluded that a jury instruction informing the jury that foreseeability was not to be considered prejudicially removed the element of proximate cause from the jury's consideration. After reviewing a series of cases, the *Roberts* court concluded that "[t]he criminal law thus is clear that for liability to be found, the cause of the harm not only must be direct, but also not so remote as to fail to constitute the natural and probable consequence of the defendant's act." (*Id.* at p. 319.)[5] "As we have explained," the court went on, "the instruction incorrectly stated the law of proximate cause. A result cannot be the natural and probable cause of an act if the act was unforeseeable. [Citation.] An instruction that told the jury to disregard foreseeability would inevitably lead it to ignore the nature of [the stabbed prisoner's] response to defendant's attack, and hence would substantially distract the jury from considering the causation element of the offense—an element that was very much at issue in the case." (*Id.* at pp. 321-322.)

Thus, in homicide cases, a "cause of the [death of the decedent] is an act or omission that sets in motion a chain of events that produces as a direct, natural and probable consequence of the act or omission the [death] and without which the [death] would not occur." (CALJIC No. 3.40 (1992 rev.) Supp. Service pamp. No. 1 (1996) [some brackets omitted]; see also *People v. Roberts, supra,* 2 Cal.4th at p. 313; *Mitchell v. Gonzales, supra,* 54 Cal.3d 1041; *People v. Temple* (1993) 19 Cal.App.4th 1750, 1756 [24 Cal.Rptr.2d 228].) In general, "[p]roximate cause is clearly established where the act is directly connected with the resulting injury, with no intervening force

---

[5]In a footnote, the *Roberts* court "acknowledge[d] there is no bright line demarcating a legally sufficient proximate cause from one that is too remote. Ordinarily the question will be for the jury, though in some instances undisputed evidence may reveal a cause so remote that a court may properly decide *that no rational trier of fact could find the needed nexus.*" (2 Cal.4th at p. 320, fn. 11.)

operating." (1 Witkin & Epstein, Cal. Criminal Law, *supra*, Elements of Crime, § 127, p. 146.) ██ In this case there was an intervening force in operation, the pursuit by the CHP officers and the collision between the vehicle of one of the officers and the decedent's car. ██ But that does not end the inquiry because "[d]efendant may also be criminally liable for a result directly caused by his act, even though there is another contributing cause." (1 Witkin & Epstein, *supra*, Elements of Crime, § 128, pp. 146-147.)

Intervening causes in criminal cases are typically described as either "dependent" or "independent."[6] A dependent intervening cause will not absolve a defendant of criminal liability while an independent intervening cause breaks the chain of causation and does absolve the defendant. (*People v. Funes* (1994) 23 Cal.App.4th 1506, 1523 [28 Cal.Rptr.2d 758].) "An intervening cause may be a normal or involuntary result of the defendant's original act. Such a cause is said to be 'dependent,' and does not supersede; i.e., the defendant is liable just as in the direct causation case." (1 Witkin & Epstein, Cal. Criminal Law, *supra*, Elements of Crime, § 130, p. 148.) An "independent" intervening "act may be so disconnected and unforeseeable as to be a superseding cause; i.e., in such a case the defendant's act will be a remote, and not the proximate, cause." (1 Witkin & Epstein, *supra*, Elements of Crime, § 131, p. 149.) In the words of the Restatement Second of Torts, again in the context of negligence, "[w]here the negligent conduct of the actor creates or increases the foreseeable risk of harm through the intervention of another force, and is a substantial factor in causing the harm, such intervention is not a superseding cause." (Rest.2d Torts, § 442A, p. 468.) Stated another way, "[t]he intervention of a force which is a normal consequence of a situation created by the actor's negligent conduct is not a superseding cause of harm which such conduct has been a substantial factor in bringing about." (Rest.2d Torts, § 443, p. 472.)

These rules governing superseding cause are succinctly stated in BAJI No. 3.79, specifying when a third party's negligence is not a superseding cause. Under this instruction, a defendant is not relieved of liability by a third party's intervening negligence if at the time of his conduct he realized or reasonably should have realized that a third party might so act or the risk of harm was reasonably foreseeable; or a reasonable person knowing the situation existing at the time of the conduct of the third party would not have regarded it as highly extraordinary that the third party had so acted; or the

---

[6]In the context of negligence, the Restatement Second of Torts defines an "intervening force" as "one which actively operates in producing harm to another after the actor's negligent act or omission has been committed." (Rest.2d Torts, § 441, subd. (1), p. 465.) A "superseding cause" is defined as "an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." (Rest.2d Torts, § 440, p. 465.)

conduct of the third person was not extraordinarily negligent and was a normal consequence of the situation created by defendant. Extraordinary, under this instruction on superseding causes, " 'means unforeseeable, unpredictable, and statistically extremely improbable.' " (Com. to BAJI No. 3.79 (8th ed. 1994 bound vol.) p. 104.)

▇ The question whether defendant's acts caused Abbett's death and Officer Homen's injuries is to be determined by the trier of fact according to these general principles governing proximate causation. (*People* v. *Armitage* (1987) 194 Cal.App.3d 405, 420 [239 Cal.Rptr. 515]; *People* v. *Harris* (1975) 52 Cal.App.3d 419, 427 [125 Cal.Rptr. 40].) ▇ As the Court of Appeal noted in *Harris*, "[a] defendant may be criminally liable for a result directly caused by his act even if there is another contributing cause. If an intervening cause is a normal and reasonably foreseeable result of defendant's original act the intervening act is 'dependent' and not a superseding cause, and will not relieve defendant of liability." (52 Cal.App.3d at p. 427.) Moreover, as leading commentators have put it, "[i]f the intervening act or other cause is reasonably foreseeable, it will not supersede. As in tort law: (1) The consequence need not have been a strong probability; a possible consequence which might reasonably have been contemplated is enough. (2) The precise consequence need not have been foreseen; it is enough that the defendant should have foreseen the possibility of some harm of the kind which might result from his act." (1 Witkin & Epstein, Cal. Criminal Law, *supra*, Elements of Crime, § 132, p. 150.) In other words, ". . . it is only an unforeseeable intervening cause, an extraordinary and abnormal occurrence, which rises to the level of an exonerating, superseding cause." (*People* v. *Armitage, supra*, 194 Cal.App.3d at pp. 420-421.)[7]

▇ Defendant claims his defense would have been that "the actions taken by the CHP officers and the decedent, especially Officer Homen, were

[7]In accordance with these principles, the jury was instructed on proximate cause as follows: "The law has its own particular way of defining cause. A cause of the injuries sustained is an act or acts that sets in motion a chain of events that produces as a direct[,] natural and probable consequence of the act, the injuries sustained and without which the injuries sustained would not occur. [¶] A direct, natural and probable consequence is a consequence which is normal and is a reasonably foreseeable result of the original act. The consequence need not have been a strong probability; a possible consequence which might reasonably have been contemplated is enough. The precise consequence need not have been foreseen. It is enough if the possibility of some harm of the kind which resulted from the act was foreseeable. [¶] There may be more than one cause of the injuries sustained. When the conduct of two or more persons contributes concurrently as a cause of the injuries sustained, the conduct of each is a cause of the injuries sustained, if that conduct was also a substantial factor contributing to the result. A cause is concurrent if it was operative at the moment of the injuries sustained and acted with another cause to produce the injuries sustained. [¶] If you find that the defendant's conduct was a cause of the injuries sustained, then it is no defense that the conduct[] of some other person, even the injured or deceased persons, contributed to the injuries sustained. However, an intervening act may be so disconnected and unforeseeable as to be a superseding cause that, in such a case[,] the defendant's act will be regarded at law

so inappropriate as to be a superseding cause which would break the chain of proximate cause—i.e., they were the sole proximate cause of the death." But the court's orders, he argues on appeal, "precluded defense counsel from presenting evidence and arguing the 'abnormality' or 'nature' of the conduct of the officers." Thus, "[d]efense counsel was denied the CHP pursuit rules to aid his expert in determining the 'abnormality' of the officer's response to [defendant's] act—including whether the officers intentionally ignored the pursuit policy guidelines."

It is the burden of the proponent of evidence to establish its relevance through an offer of proof or otherwise. (Evid. Code, § 354.) Defendant's assertion in the trial court that he should have been permitted to introduce evidence with respect to the "reasonableness" of the officers' conduct is subject to a certain imprecision of terminology. There are two potential concepts that may be referred to within the rubric of the "reasonableness" of the officers' conduct. One of these concepts focuses upon the point of view of the officers, while the other focuses upon the point of view of the defendant. ■■ If we were concerned with a tort action, a disciplinary hearing, or even a criminal action *against the officers,* then we would be focused upon the officers' conduct and the "reasonableness" thereof, from their point of view.[8] In that respect we would consider the harm that was reasonably foreseeable to the officers, and whether their conduct created an unreasonable risk of harm to others. But, we reiterate, the negligence or other fault of the officers is not a defense to the charge against defendant. The fact that the officers may have shared responsibility or fault for the accident does nothing to exonerate defendant for his role. In short, whether the officers' conduct could be described with such labels as negligent, careless, tortious, cause for discipline, or even criminal, in an action against them, is not at issue with respect to the defendant here. In this sense the "reasonableness" of the officers' conduct, focused upon their point of view and their blameworthiness for the death, is not relevant.

The issue with respect to defendant focuses upon his point of view, that is, whether the harm that occurred was a reasonably foreseeable consequence of

---

as not being a cause of the injuries sustained." The court also instructed: "It is not a defense to a criminal charge that the deceased or some other person was guilty of negligence, which was a contributory cause of the death involved in the case."

[8]An officer involved in pursuit of a suspected lawbreaker, who sounds a siren and displays a lighted red lamp, is exempt from the usual rules of the road, but still has a duty to drive with due regard for the safety of others. (Veh. Code, §§ 21055-21056.) But such an officer is immune from liability for civil damages and, under some circumstances, his or her employer may also be immune. (Veh. Code, §§ 17004, 17004.7.) Immunity statutes operate to preclude liability despite fault rather than to dispel the possibility of fault. (*Williams* v. *State of California* (1983) 34 Cal.3d 18, 22 [192 Cal.Rptr. 233, 664 P.2d 137].) Thus, while as a practical matter immunity statutes may preclude a civil plaintiff from recovering against officers who are involved in a vehicle pursuit, they do not compel the conclusion that the officers were not negligent or otherwise at fault.

his conduct at the time he acted. Since the officers' conduct was a direct and specific response to defendant's conduct, the claim that their conduct was a superseding cause of the accident can be supported only through a showing that their conduct was so unusual, abnormal, or extraordinary that it could not have been foreseen. (*People* v. *Armitage, supra,* 194 Cal.App.3d at pp. 420-421.) In this respect the use of the word "reasonableness" with respect to the officers' conduct is not particularly apt for several reasons. First, the use of the word "reasonableness" would naturally lead to confusion since reasonableness is inextricably bound up in the standards applicable to an assessment of the officers' conduct from their point of view, such as would be presented in a civil, disciplinary or criminal action against the officers. Such an assessment might reveal whether the officers share the blame, but shared blame does nothing to exonerate defendant and categorizing the officers' conduct from their point of view is not relevant here. Second, "reasonableness" is not an accurate or sufficient description of the issue involved here, since in order to exonerate defendant it is not enough that the officers' conduct be unreasonable; rather it must be sufficiently extraordinary as to be unforeseeable. Third, there are far more appropriate linguistic formulations available, such as referring to the officers' conduct as unusual, abnormal, or extraordinary.

Although reference to the "reasonableness" of the officers' conduct is not a particularly apt way of addressing the issues presented in this case, we recognize that words "do not have absolute and constant referents." (*Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 38 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373].) The sense in which a word is used is dictated by the circumstances surrounding its use. (*Id.* at pp. 38-39.) Accordingly, we do not hold that the "reasonableness" of the conduct of third parties is in all events irrelevant in the defense of a criminal charge involving gross negligence. So long as it is fully understood that what is at issue is the reasonable foreseeability, from the defendant's point of view, of the harm that occurred, the use of the word "reasonableness" with respect to the conduct of third parties is not per se inappropriate.

The record reveals that the parties and the trial court were aware of, and fully addressed, the distinction we have been discussing here. In the initial discussion of the matter the prosecutor said: "The problem arises here, when you ask the expert whether or not the actions of the officer were reasonable, the question is reasonable to who? To another officer? To an expert in pursuits? That's the problem. The only issue that's in front of the jury is whether it's reasonable to a reasonable person. The objective standard, not someone who has the qualifications of an expert." The court noted that it is "for the jury to determine whether the acts of the officer or officers were

normal and reasonably foreseeable results" and added "whether the actions were reasonable or unreasonable is neither here nor there. The question is whether they were reasonably foreseeable."

The court subsequently returned to the discussion of the foreseeability question and said that it did so because "my concern here was prompted by the use of the word 'reasonable' in one or more contexts last Thursday. And I'm concerned that you folks and I are on some common ground before either of you gets into an area." On that occasion the court said "we're not to be focused on whether the conduct of the others, meaning the decedent and the pursuing officer, were reasonable but, rather, the focus has to be on whether their conduct was reasonably foreseeable."

When the court rendered its final ruling in the matter it noted the distinction between the issue of reasonable foreseeability at issue in this case and reasonableness or lack of reasonableness such as would be at issue in a civil action. The court then said, "I certainly believe that each should be entitled, both in the evidence that you elicit from witnesses, to attempt to develop evidence which then you can ultimately argue to the jury on the question of causation, on the question of foreseeability. [¶] But while those questions are germane and you may feel free to develop them, a separate identifiable discrete area is the question of the reasonableness or lack of reasonableness of the officers and their conduct. That is not an area that I see is relevant in these proceedings." The court held that "inquiry may not be made as to whether, given background, training and experience of a peace officer working in the traffic field, the manner in which either Petch or Homen or both of them conducted themselves was reasonable, unreasonable, substandard or the like. That we won't be going into in this trial."

█ Given this record, the rule requiring a specific offer of proof in order to preserve an evidentiary ruling for appeal comes into play. (Evid. Code, § 354.) An offer of proof should give the trial court an opportunity to change or clarify its ruling and in the event of appeal would provide the reviewing court with the means of determining error and assessing prejudice. (*People* v. *Whitt* (1990) 51 Cal.3d 620, 648 [274 Cal.Rptr. 252, 798 P.2d 849].) To accomplish these purposes an offer of proof must be specific. It must set forth the actual evidence to be produced and not merely the facts or issues to be addressed and argued. (*McCleery* v. *City of Bakersfield* (1985) 170 Cal.App.3d 1059, 1074 [216 Cal.Rptr. 852]; *People* v. *Sperl* (1976) 54 Cal.App.3d 640, 657 [126 Cal.Rptr. 907].) █ In this case the trial court understood and was legally correct in making the distinction we have been discussing, that is, the distinction between reasonableness of the officers' conduct from their point of view and reasonable foreseeability of that

conduct from the defendant's point of view. The court endeavored to explain that distinction as clearly as it could and repeatedly advised the defense that it would not be precluded from introducing evidence and argument with respect to the reasonable foreseeability of the officers' conduct. ██ ▄▄ ▄▄ Any doubt whether specific evidence fell within or without the scope of this ruling could have been resolved by, and should have been presented to, the trial court by means of a specific offer of proof.[9] ██ Accordingly, we will not speculate whether the court's ruling dissuaded the defense from presenting admissible evidence but will limit our review to the specific evidentiary matters identified to the trial court.

With respect to defendant's appellate assertion regarding the pursuit policy guidelines of the CHP, we find no error for several reasons. First, in its written opposition to the prosecution's motion *in limine* the defense stated: "Defendant was not able to obtain through discovery the provisions of the actual CHP policy, other than a sanitized version. Defense counsel does not intend to introduce evidence of that sanitized pursuit policy, nor does counsel intend to present evidence of the actual policy or compliance or lack of compliance with such an actual policy." Thereafter, throughout the discussions and argument concerning the "reasonableness" issue, counsel did not raise the pursuit policy question. In short, the defense not only failed to make a specific offer of proof with respect to the CHP pursuit policies, it withdrew any attempt to introduce that question.

Second, without more, the fact that the CHP has adopted pursuit policies would not avail defendant. The logical inference to be drawn from the mere existence of pursuit policies would be decidedly adverse to defendant, since those policies were adopted precisely because vehicular pursuit of lawbreakers by officers and the resulting danger to users of the roads are so foreseeable.[10] If it were shown additionally that, at the time he acted, defendant was aware of the CHP pursuit policies, then it could be argued that he could

---

[9]This is not a case in which an offer of proof was unnecessary because it would have been futile. "Where an entire class of evidence has been declared inadmissible or the trial court has clearly intimated it will receive no evidence of a particular class or upon a particular issue, an offer of proof is not a prerequisite to raising the question on appeal, and an offer, if made, may be broad and general." (*Beneficial etc. Ins. Co.* v. *Kurt Hitke & Co.* (1956) 46 Cal.2d 517, 522 [297 P.2d 428]; *Montez* v. *Superior Court* (1970) 10 Cal.App.3d 343, 351 [88 Cal.Rptr. 736].) Here the trial court did not exclude an entire class of evidence but rather made a legally correct distinction between the relevant and irrelevant matters that a type of evidence might be offered to address. This is precisely the type of situation in which a specific offer of proof would enable the court to determine whether the proffered evidence fell within or without its ruling.

[10]The published decisional authorities of this state reflect the frequency of harm caused by pursuit of fleeing lawbreakers. Without any attempt to be exhaustive, the following recent decisions are illustrative: *Thomas* v. *City of Richmond* (1995) 9 Cal.4th 1154 [40 Cal.Rptr.2d

expect that the officers would act in accordance with them. However, such a theory was neither expressly tendered nor implicitly suggested by the defense.

Finally, whether the officers violated the CHP pursuit guidelines is immaterial. The question is whether defendant realized or should have realized that the CHP officers would pursue his fleeing motorcycle. In this case the evidence clearly shows that defendant knew, or at the very least, should have known that his flight would cause the officers to pursue him. This is true if for no other reason than the officers were in fact pursuing him and he nevertheless continued to flee.[11] This illegal and dangerous act by defendant caused the officers to pursue him and ultimately caused the fatal accident. It adds not one whit to say that the officers violated the CHP pursuit guidelines. The test, as we have recounted, is not whether the officers acted reasonably but rather whether defendant realized or should have realized that the officers would respond as they did. Assume, for purposes of illustration, a bank has a written policy that its armed guards should not fire their weapons at an armed robber if the bank is full of customers. Nevertheless, in the course of an armed robbery during business hours the guard, fearing the robber might injure or kill someone, predictably fires at the robber but misses and kills a customer. Can the defendant robber charged with the murder of the customer establish that the shooting by the guard was a superseding cause because it violated the bank's rules? The answer to that hypothetical is the same as the answer to the identical claim in this case: no. Just as the robber has no knowledge of the bank's rules, so too defendant lacks any knowledge of the CHP guidelines. If it is reasonably foreseeable that the guard, in the heat of the frightening moment, will fire at the robber, or that the CHP officers will give chase to a fleeing motorcycle traveling

442, 892 P.2d 1185]; *Brummett* v. *County of Sacramento* (1978) 21 Cal.3d 880 [148 Cal.Rptr. 361, 582 P.2d 952, 4 A.L.R.4th 858]; *Billester* v. *City of Corona* (1994) 26 Cal.App.4th 1107 [32 Cal.Rptr.2d 121]; *Bryant* v. *County of Los Angeles* (1994) 26 Cal.App.4th 919 [32 Cal.Rptr.2d 285]; *Berman* v. *City of Daly City* (1993) 21 Cal.App.4th 276 [26 Cal.Rptr.2d 493]; *Payne* v. *City of Perris* (1993) 12 Cal.App.4th 1738 [16 Cal.Rptr.2d 143]; *Colvin* v. *City of Gardena* (1992) 11 Cal.App.4th 1270 [15 Cal.Rptr.2d 234]. Because vehicle pursuits and the danger created thereby are so foreseeable, the Legislature adopted Vehicle Code section 17004.7, which provides civil immunity for a public agency that adopts pursuit policies, in the hope of reducing the frequency of accidents. (*Hooper* v. *City of Chula Vista* (1989) 212 Cal.App.3d 442, 456 [260 Cal.Rptr. 495].)

[11]Defendant's conduct, and the foreseeability of harm to others, must be evaluated on a course-of-conduct basis rather than at its inception. A defendant would not be exonerated by unforeseeability of harm when he embarked upon a course of conduct if at any time, while he could yet desist, a danger became foreseeable. Moreover, actual knowledge of the reaction of a third person would render foreseeability of that reaction superfluous if the reaction was apparent when the harm could yet be averted. Accordingly, even if defendant did not expect the officers to pursue him, the evidence is uncontradicted that they did pursue him, he was aware they were pursuing him, and he exacerbated his conduct in response.

over 90 miles per hour, it is no defense to prove a rule violation. The task of the jury is to determine whether the officers' response was so extraordinary that it was unforeseeable, unpredictable and statistically extremely improbable. A rule violation may give rise to civil liability or disciplinary action, but it has nothing to do with the foreseeability of the officers' conduct. As we noted in *Armitage*, ". . . an unreflective act in response to a peril created by defendant will not break a causal connection. In such a case, the actor has a choice, but his act is nonetheless unconsidered. 'When defendant's conduct causes panic an act done under the influence of panic or extreme fear will not negative causal connection unless the reaction is wholly abnormal.' (Hart & Honore, Causation in the Law (2d ed. 1985) p. 149.)" (*People* v. *Armitage, supra*, 194 Cal.App.3d at p. 421.)

The remaining question on appeal is with respect to the "reasonableness" of the officers' conduct in general. As we have noted, a defendant may be held to have caused an injury or death that is the result of the reaction of a third person to the defendant's conduct. In this respect "[i]t is not necessary that an act which is done by the person harmed or by a third party be 'reasonable'; that is, that the act be one which a reasonable man would regard as not involving an unreasonable risk to himself or others. It is enough that the act is a normal consequence of the situation created by the actor's negligence. If it is done by the person who is harmed and is unreasonable in the sense above stated, it may amount to contributory negligence which as such prevents him from recovering [citation], but the actor's negligent conduct is none the less the legal cause of the harm." (Rest.2d Torts, § 443, com. a, p. 472.) In short, the proper test is one of proximate cause and natural and probable consequences and not one of "reasonable response." (*People* v. *Gardner* (1995) 37 Cal.App.4th 473, 476-483 [43 Cal.Rptr.2d 603].)

The critical factor in determining the question of proximate cause is the foreseeability of an intervening act. In this respect *People* v. *Harris, supra*, 52 Cal.App.3d 419 bears striking similarity to the instant case. In *Harris*, a police officer observed defendant speeding and attempted to stop him. Defendant led two police cars on a chase reaching speeds of 100 miles per hour on city streets. At one intersection, a car pulled out and was hit by the second pursuing police vehicle. A passenger in the car was killed, and defendant was charged with vehicular manslaughter. (*Id.* at pp. 421-425.) The trial court set aside the information, finding defendant's conduct was not the proximate cause of the victim's death. (*Id.* at p. 425.)

The Court of Appeal reversed. After reviewing principles of proximate causation, the court noted: "[D]efendant initiated an unlawful and reckless

course of speed on public streets and then continued it for 4.4 miles in an effort to evade law enforcement officers who, using emergency sirens and red lights, tried to apprehend him. . . . His speed at times exceeded 100 miles per hour. It was reasonably foreseeable that the officers would continue to chase him as he speeded recklessly and circuitously over public thoroughfares and failed to stop at boulevard stops, thus setting in motion circumstances creating peril to others on the public streets and a high probability that collisions, injuries and deaths would occur in the course of the chase." (*People* v. *Harris, supra,* 52 Cal.App.3d at p. 427.)

Similarly, in *People* v. *Pike* (1988) 197 Cal.App.3d 732 [243 Cal.Rptr. 54], an officer was killed when his vehicle collided with another officer's car while pursuing defendant in a high-speed chase. (*Id.* at pp. 735-739.) Charged with vehicular manslaughter, defendant argued his conduct was not the proximate cause of the officer's death. (*Id.* at p. 748.) In language equally applicable to the case before us, the appellate court rejected this claim: "Defendant's grossly negligent acts consisted of his seeking to elude the pursuing law enforcement officers by charging through traffic at extremely high speeds. Had defendant stopped as he should have, the accident would not have occurred. Instead, his persistent attempt to escape brought about just what would be expected: pursuit by more officers. The speeds, places, conditions and methods of driving were primarily dictated by defendant; he chose the route and speeds. Predictably, the officers chose to follow suit, keep him in view and apprehend him when he stopped or was stopped. The probability that this might result in one or both of the officers losing control and/or colliding with another vehicle or some object is sufficient to establish that defendant's conduct was a cause that, in natural and continuous sequence, produced [the victim's] death and without which that death would not have occurred." (*Id.* at pp. 749-750.)

During argument to the trial court, defense counsel suggested that an expert witness could testify to means other than a high-speed chase that "would have been more safely and prudently done to lessen the risk to the public." He indicated that he would produce one or more experts to testify "[t]hat based on their experience and training and maybe through a series of hypotheticals, did the officer act reasonably under those circumstances?" And counsel said, ". . . I believe the officer's conduct is a question that— for the jury to decide, whether it was reasonable or not under those given circumstances in this particular case." As we have explained, the trial court correctly ruled that the proper question was one of reasonable foreseeability rather than the reasonableness of the officers' response to defendant's conduct. (*People* v. *Gardner, supra,* 37 Cal.App.4th at pp. 476-483.) Defendant's professed intent to address the reasonableness of the officers' conduct

was properly rejected and the defense did not make a specific offer of proof that demonstrates that relevant evidence was excluded under the court's ruling.

In summary, in this case defendant, acting with gross negligence, created a situation to which CHP officers responded. As a result of defendant's conduct and the officers' response, a vehicle collision occurred in which a third party was killed and one of the officers was injured. The question whether defendant's conduct is legally responsible for the death and injury depends upon whether the officers' conduct can be regarded as a superseding cause. That issue depends upon whether the danger was reasonably foreseeable to defendant rather than upon the reasonableness of the officers' response. The court made that distinction, explained it carefully in its ruling, and repeatedly advised that evidence and argument with respect to reasonable foreseeability would not be excluded. The defense pointed to no specific relevant evidence that it was dissuaded from presenting by the court's ruling. The jury was expressly instructed that "an intervening act may be so disconnected and unforeseeable as to be a superseding cause," absolving defendant of liability. The jury simply rejected this claim. There is no cause for reversal on this record.

II.-VI.*

. . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is modified by striking the trial court's order requiring reimbursement of attorney fees under Penal Code section 987.8. In all other respects, the judgment is affirmed.

Davis, J., and Morrison, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 10, 1996.

---

*See footnote, *ante*, page 38.