[No. B237797. Second Dist., Div. Six. Mar. 28, 2012.]

J.M., Petitioner, v.
THE SUPERIOR COURT OF VENTURA COUNTY, Respondent;
COUNTY OF VENTURA HUMAN SERVICES AGENCY, Real Party in
Interest.

**COUNSEL**

Richard C. Gilman, under appointment by the Court of Appeal, for Petitioner.

No appearance for Respondent.

Leroy Smith, County Counsel, and Oliver G. Hess, Assistant County Counsel, for Real Party in Interest.

**OPINION**

**GILBERT, P. J.**—Here we conclude when a mother's criminal neglect is a substantial factor in the health of her child, she is not entitled to reunification services.

J.M. (Mother) seeks an extraordinary writ and challenges an order of the juvenile court bypassing family reunification services and setting a permanent plan hearing regarding her two minor children. (Welf. & Inst. Code, §§ 361.5, subd. (b)(4), 366.26, subd. (c).)[1] We deny her petition for extraordinary writ.

---

[1] All further statutory references are to the Welfare and Institutions Code unless stated otherwise.

## FACTUAL AND PROCEDURAL HISTORY

Mother is the parent of seven-year-old A.M. and four-year-old T.M. She was also the parent of I.M., who was five years old when he died in June 2011 from acute oxycodone intoxication.[2]

On July 1, 2011, following I.M.'s death, the County of Ventura Human Services Agency (HSA) filed a dependency petition on behalf of A.M. and T.M. HSA alleged that the children were at significant risk of abuse or neglect due to Mother's drug abuse and criminal behavior. HSA stated that Mother permitted and used illegal drugs in the family home, and that I.M. died from ingesting dangerous drugs. HSA also alleged that T.F., the presumed father of the children, abused drugs, had a lengthy criminal history, and was serving a prison term. HSA added that in prior dependency proceedings, the juvenile court terminated T.F.'s parental rights to the half siblings of A.M. and T.M. (§ 300, subds. (b), (f), (g).)

On July 5, 2011, the juvenile court held a detention hearing. It found a prima facie case regarding the dependency petition, placed the children in the temporary care and custody of HSA, and set the matter for a jurisdiction and disposition hearing.

On September 7, 2011, HSA filed an amended dependency petition alleging that Mother's neglect caused I.M.'s death. HSA alleged that Mother permitted a seller of illegal drugs into her home, obtained and ingested illegal drugs from that person, and failed to protect her children from possessing and ingesting the illegal drugs. HSA stated: "These neglectful acts and omissions by [Mother] were a substantial factor contributing to the death of [I.M.], and place[d] the minors, [A.M.] and [T.M.], at substantial risk of serious physical harm." HSA then recommended that the juvenile court bypass family reunification services to Mother pursuant to section 361.5, subdivision (b)(4) (parent has caused death of another child through abuse or neglect).[3]

On November 8 and December 8, 2011, the juvenile court held a contested jurisdiction and disposition hearing. The court received evidence of HSA

---

[2] Oxycodone is a schedule II controlled substance pursuant to Health and Safety Code section 11055, subdivision (b)(1)(M).

[3] HSA also recommended that the juvenile court bypass reunification services to T.F. He waived his right to appear at the jurisdiction and disposition hearing and is not a party to Mother's writ petition.

written reports and memoranda, and testimony from Ventura Police Detective Kenny Welch, an experienced criminal investigator, regarding illegal drugs and Ventura criminal street gangs.

The evidence established that Mother resided at an apartment on Ramona Avenue with her boyfriend Marcos Angulo, a parolee. Detective Welch described the apartment as a "crash pad" and a "drug house" that was well known to local police officers for illegal drug crimes, including possession and sale of narcotics. On July 30, 2009, Mother was placed on probation following her conviction of theft. Terms of her probation required her to abstain from use of illegal drugs. Before and after I.M.'s death, Mother violated the terms of her probation, however, by having positive drug tests for methamphetamine.

Mother was also associated with the Ventura Avenue Gangsters, a criminal street gang. On March 28, 2011, she was arrested and charged with battery after she attacked a man and woman in a gang-related incident. Detective Welch testified that the Ventura Avenue Gangsters were involved in illegal drug sales.

On May 14, 2011, approximately six weeks prior to I.M.'s death, police officers detained Mother in a traffic stop. They arrested her for possession of illegal drugs after she attempted to hide oxycodone and other narcotics in her clothing. On June 22, 2011, police officers visited the Ramona Avenue apartment and arrested Angulo for possession of illegal drugs (oxycodone). They also arrested a cotenant for being under the influence of methamphetamine. The next day, police officers detained and arrested Mother during a traffic stop for possession of a marijuana pipe. The minor children were also in the automobile. T.M. stated to police officers that Mother smoked marijuana and I.M. comically imitated Mother smoking drugs with the pipe.

On the evening of I.M.'s death, Mother's friend, minor C.A., visited the apartment and brought purloined illegal prescription drugs (Xanax and oxycodone) in a plastic orange container. C.A. hoped to "sling," i.e., sell, the drugs because she knew Mother's apartment to be a "dope house." Outside Mother's presence, A.M. saw his brother I.M. ingest a pill from the container. C.A. and Mother ingested some Xanax pills. Before sleeping, C.A. put the plastic orange container inside her purse and placed it on the table.

The next morning, A.M. arose and attempted to waken I.M., who was cold and not breathing. A.M. alerted Mother, who telephoned the police

emergency dispatcher. Paramedics soon responded and found I.M. in full cardiopulmonary arrest. The paramedics and hospital emergency room personnel attempted to resuscitate I.M., but were not successful.

At the hospital, Mother appeared distraught and behaved aggressively. An HSA social worker and a hospital nurse believed Mother to be under the influence of illegal drugs. Mother later denied to the social worker that she used illegal drugs and stated that she did not allow illegal drugs in her home.

On June 30, 2011, the Ventura County medical examiner performed an autopsy on I.M.'s body. The medical examiner found four partially dissolved pills in I.M.'s stomach as well as numerous time-release pill particles. Subsequent toxicology tests detected oxycodone and benzodiazepine in I.M.'s blood and gastric specimens. The medical examiner concluded that I.M. died from acute oxycodone intoxication.

On September 18, 2011, police officers again detained Mother following a traffic stop. They arrested her for possession of Suboxone and methamphetamine. Mother's male companion, a convicted felon and criminal street gang member, bolted from the automobile. Police officers gave chase, tackled him, and arrested him for possession of morphine and methamphetamine. Mother was incarcerated for numerous probation violations, including possession of illegal drugs. She remained incarcerated at the time of the jurisdiction and disposition hearings.

Following argument by the parties, the juvenile court sustained the allegations of the amended dependency petition, bypassed family reunification services to Mother, and set a permanent plan hearing. (§§ 300, subds. (b), (f), (g), 361.5, subd. (b)(4).) In ruling, the trial judge stated that a substantial risk of harm to the minor children was "almost inevitable," given Mother's drug-abusing "lifestyle." The court also specifically found that Mother's drug abuse was "a substantial cause, [with] no intervening factor that was not foreseeable" in I.M.'s death.

Mother challenges the juvenile court's order bypassing family reunification services and setting a permanent plan hearing.

## DISCUSSION

Mother argues that the "abuse or neglect" contemplated by section 300, subdivision (f) must rise to the degree of culpability encompassed within the concept of criminal negligence. (*Ibid.* [a minor may come within the juvenile court's jurisdiction if his "parent or guardian caused the death of another child through abuse or neglect"].) She also asserts that the bypass provision

of section 361.5, subdivision (b)(4), with identical language, also requires proof of criminal negligence.

Mother contends that her acts and omissions are not a direct or proximate cause of her child's death. She maintains that section 300, subdivision (f) must be interpreted to mean a criminal law standard of causation. (*People v. Schmies* (1996) 44 Cal.App.4th 38, 48 [51 Cal.Rptr.2d 185] [in homicide cases, a cause of death is " 'an act or omission that sets in motion a chain of events that produces as a direct, natural and probable consequence of the act or omission the [death] and without which the [death] would not occur' "].)

Mother and HSA point out that our Supreme Court is considering causation and the degree of culpability required pursuant to section 300, subdivision (f) in *In re Ethan C.* (2010) 188 Cal.App.4th 992 [115 Cal.Rptr.3d 847], review granted December 21, 2010, No. S187587, and *In re L.L.* (Dec. 23, 2010, F059134 [nonpub. opn.]), review granted March 30, 2011, No. S190230.

■ Resolution of Mother's negligence argument is unnecessary because the juvenile court's jurisdiction ruling was supported by overwhelming and compelling evidence that satisfied even the higher criminal standard of neglect and causation. Mother embraced a drug lifestyle; she lived in a "drug house," and immersed herself in a culture of illegal drugs before and after I.M.'s death. Her children were aware that she used illegal drugs and imitated her smoking drugs from a glass pipe. On the evening of I.M.'s death, she permitted a drug seller to provide her with stolen prescription drugs and then stay overnight in the residence. Mother wantonly and recklessly exposed her children to illegal drugs and made them easily accessible. Sufficient evidence supports the jurisdiction finding under any standard of neglect. (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 450–451 [90 Cal.Rptr.3d 44] [standard of review of sufficiency of evidence to support a jurisdiction finding].)

■ Section 300, subdivision (f) requires a causal connection between the parent's acts or omissions and the child's death. (*In re A.M.* (2010) 187 Cal.App.4th 1380, 1388 [115 Cal.Rptr.3d 552].) "Under both criminal and civil standards, a causal connection occurs when the acts of an individual are a substantial factor contributing to a death or injury." (*Ibid.*) Here Mother exposed her children to a drug lifestyle by living in a drug house and using drugs in their presence. She used stolen prescription drugs with minor C.A. and permitted C.A. to stay overnight. Neither Mother nor C.A. secured the drugs to prevent the children's access to them. Mother's conduct was a substantial factor causing I.M. to ingest multiple pills of dangerous narcotics that led to his death. (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 825 [2 Cal.Rptr.2d 429] [juvenile court may infer that child is subjected to substan-

tial risk of serious harm when he is placed in an environment allowing access to drugs with nothing to prevent him from ingesting them].)

We deny the petition for extraordinary writ.

Yegan, J., and Perren, J., concurred.

On April 25, 2012, the opinion was modified to read as printed above.