Filed 4/4/23 In re A.L. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| In re A.L., a Person Coming Under the Juvenile Court Law. | C096442 |
| NEVADA COUNTY DEPARTMENT OF SOCIAL SERVICES, | (Super. Ct. No. J09612) |
| Plaintiff and Respondent, | |
| v. | |
| C.M., | |
| Defendant and Appellant. | |

C.M. (mother) appeals from juvenile court orders terminating dependency jurisdiction and awarding custody of the minor to the father with no visitation for mother. (Welf. & Inst. Code, §§ 364, 395.)[1] Mother contends the juvenile court erred in finding her offer of proof insufficient to warrant an evidentiary hearing. Finding no error, we will affirm the juvenile court orders.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

BACKGROUND

Prior to these dependency proceedings, child protective services in three counties received 64 referrals involving the minor. The Nevada County Department of Social Services/Child Welfare Services (Department) filed a section 300 petition on behalf of the then six-year-old minor, alleging that the parents have a history of engaging in domestic violence in the minor's presence, father failed to protect the minor from physical abuse while in the care of mother and her husband, and mother failed to protect the minor from threats and physical abuse inflicted by her husband. The juvenile court sustained the petition under section 300, subdivision (c) (serious emotional damage) based on the threats and domestic violence occurring in the minor's presence, adjudged the minor a dependent, and removed the minor from parental custody.

The minor was diagnosed with post-traumatic stress disorder (PTSD) and treatment goals were to stabilize her emotional and behavioral functioning. She had sexualized, destructive, and aggressive behaviors. Both parents were diagnosed with PTSD features with delayed expression and a history of reactive attachment disorder. Mother was also diagnosed with a moderate cannabis use disorder, and unspecified personality disorder with borderline personality traits.

Mother participated in reunification services but struggled to benefit from some of the programs. Some aspects of her supervised visits were positive; for example, mother and the minor played games and mother provided positive affirmation for the minor's good behavior, but when the minor acted out, mother required assistance in gaining control and setting boundaries to help the child remain calm and safe.

The minor was provided wraparound therapy services, neurofeedback treatment with Dr. Finnick, and psychiatric treatment with Dr. Foster. The minor shared stories of abuse at the hands of mother's husband, resulting in the minor's continued nightmares and flashbacks. Dr. Foster reported the minor's behavioral difficulties were worse after visits or phone calls with mother. Dr. Foster concluded that visits with mother were

2

detrimental to the minor and recommended a six-month suspension of such visits to help the minor develop a sense of safety and regulate her mental health. Dr. Finnick agreed with this assessment.

Visitation between mother and the minor was suspended temporarily in August 2021. Dr. Foster reported that initially, the minor had been behaviorally, emotionally, and cognitively disorganized; frightened, angry, aggressive, and hypersexualized; and that she initially displayed distractibility, hyperactivity, and impulsivity. But with placement outside mother's custody, along with play therapy, bio-neurofeedback therapy, and increased contact with her father, she had begun to stabilize. The minor's behaviors improved significantly over the next few weeks following temporary suspension of visits with mother. Father had substantially and adequately participated in services, and in September 2021, the minor transitioned to living in father's home. Visits with mother were reintroduced in October 2021 as therapeutic visits until such time as the minor's therapist indicated that was no longer warranted.

In February 2022, the minor was doing well in father's home but still having only therapeutic visits with mother. Dr. Finnick found that some of the minor's difficulties coincided with a return from maternal visitation and the correlation did not appear coincidental as it occurred regularly. The minor's behavior pattern suggested her visits with mother were triggering emotional trauma. Dr. Foster noted the minor dramatically regressed after resuming visits with her mother in October 2021. Father also reported an increase in behavioral problems after visits with mother.

In the Department's April 2022 status review report, it reported that mother was in family reunification with her other children in Sutter County and she was residing with her husband. She declined mental health services and did not show growth or change in her co-parenting practices, but she attended her weekly counseling, and her counselor reported her PTSD to be in remission and her mood stable. She also attended weekly therapeutic visits with the minor. On some occasions the minor would express that she

3

did not want to leave her mother and wanted to go home with her, but the minor had also refused to attend half of the visits between February and April 2022. The minor would avoid sleep, have nightmares, and need to co-sleep with a family member after visits. The social worker believed that if contact with mother were to continue, medication would be necessary to manage the minor's behavior. The minor had regressed and not met her treatment goals. The Department recommended termination of dependency, with sole legal and physical custody to father and no visitation for mother. At the April 21, 2022 section 364 review hearing, mother objected to this recommendation and asked the juvenile court to schedule a contested hearing. The juvenile court continued the section 364 review hearing to permit mother's counsel to provide an offer of proof in support of her request for an evidentiary hearing. The juvenile court suggested it might be helpful, but not required, to make the offer of proof in writing.

Mother's counsel filed a written motion in limine seeking to exclude the report and testimony of Dr. Foster. At the continued hearing, the juvenile court denied mother's request for a further continuance based on late receipt of addendum reports. Mother's counsel then made a verbal offer of proof, which we describe in the discussion below. The juvenile court found the offer of proof insufficient.

The juvenile court dismissed the minor as a dependent of the juvenile court and granted sole physical and legal custody to father. It ordered mother's visitation suspended to "give [the minor] a chance to recover from past trauma inflicted in [mother's] custody." The juvenile court further ordered that before returning to family court to seek visitation, there must be a change in circumstances with respect to the minor's recovery process and mother must continue to participate in treatment.

## DISCUSSION

The parties agree the juvenile court acted within its authority when it required mother to make an offer of proof before it scheduled an evidentiary hearing. But mother contends she made an adequate showing to warrant a contested evidentiary hearing.

4

Section 364, subdivisions (a) and (c) require the juvenile court to conduct a review hearing at least every six months for a dependent child who has not been removed from the physical custody of his or her parent, to consider evidence presented as to whether continued juvenile court supervision is necessary. (§ 364, subd. (c); *In re Elaine E.* (1990) 221 Cal.App.3d 809, 814.) "The court shall terminate its jurisdiction unless the social worker or his or her department establishes by a preponderance of evidence that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn." (§ 364, subd. (c); see *In re Shannon M.* (2013) 221 Cal.App.4th 282, 290-291 [section 364, subdivision (c) establishes a "statutory presumption in favor of terminating jurisdiction and returning the children to the parents' care without court supervision"].)

The juvenile court makes its determination based on the totality of the evidence before it. (*In re Armando L.* (2016) 1 Cal.App.5th 606, 615.) If the juvenile court terminates its jurisdiction, section 362.4 authorizes the issuance of a custody and visitation order (commonly referred to as an exit order) that will become part of the relevant family law file and remain in effect in the family law action "until modified or terminated by a subsequent order." (*In re T.S.* (2020) 52 Cal.App.5th 503, 513; see § 362.4, subdivision (b).) When making a custody determination under section 362.4, "the court's focus and primary consideration must always be the best interests of the child." (*In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268; accord, *In re Chantal S.* (1996) 13 Cal.4th 196, 206.)

An offer of proof may be required before granting a full evidentiary hearing at this stage of the proceedings. Courts have recognized that " '[d]ifferent levels of due process protection apply at different stages of dependency proceedings.' " (*In re A.B.* (2014) 230 Cal.App.4th 1420, 1436.) Requiring an offer of proof is acceptable when, as here, a parent is not facing termination of parental rights. (*Id.* at pp. 1436-1437; see also *In re T.S., supra*, 52 Cal.App.5th at p. 517.)

"A proper offer of proof gives the trial court an opportunity to determine if, in fact, there really is a contested issue of fact. The offer of proof must be specific, setting forth the actual evidence to be produced, not merely the facts or issues to be addressed and argued." (*In re Tamika T.* (2002) 97 Cal.App.4th 1114, 1124; see *People v. Schmies* (1996) 44 Cal.App.4th 38, 53 (*Schmies*).) It must consist of material that is admissible and must make known the substance, purpose, and relevance of the evidence. (Evid. Code, § 354, subd. (a); *Semsch v. Henry Mayo Newhall Memorial Hospital* (1985) 171 Cal.App.3d 162, 167 (*Semsch*).) "The substance of evidence to be set forth in a valid offer of proof means the testimony of specific witnesses, writings, material objects, or other things presented to the senses." (*United Sav. & Loan Assn. v. Reeder Dev. Corp.* (1976) 57 Cal.App.3d 282, 294.)

Mother objected to the Department's recommendations to grant father sole custody and to deny mother visitation, and she requested a contested hearing on those issues. In that context, her offer of proof had to establish that there were contested facts relating to the propriety of granting sole custody to father and denying visitation to mother. She had to describe the specific admissible evidence that she would produce, along with its purpose and relevance.

Mother's counsel indicated they would subpoena therapy and therapeutic visit notes. This identified general material to be presented, but it did not indicate the purpose of the material or how the contents were relevant to a contested fact. Counsel also indicated they would subpoena school records to show there was no improvement in the minor's behavior during the time visits were suspended. However, there was no showing that the school records had already been obtained or what they actually established.

Mother's counsel added that she wanted to present evidence that mother's other children were returned to her custody, acknowledging that it might require her to file a section 827 petition for access to confidential out-of-county records. But it is not clear that the return of mother's other children to her custody was a contested fact; the

6

Department's status report confirmed that she was in family reunification with those children. Moreover, counsel did not explain how such evidence was available or admissible. (See § 827; *In re Gina S.* (2005) 133 Cal.App.4th 1074, 1081-1082 [juvenile court has exclusive authority to determine the extent to which confidential juvenile records may be released, and controls the time, place, and manner of inspection].)

In addition, mother's counsel represented that she would present evidence that mother had initiated an Individual Education Program (IEP) for the minor and was in constant communication with the minor's school to monitor the minor's behavior and progress. This information did not identify the specific evidence or witness to be presented or the purpose of the evidence.

Counsel further stated mother would show that her trauma had been addressed. Counsel said mother had a report from a therapist and a psychological evaluation with an assessment performed by a Dr. Whueler that differed from Dr. Foster's assessment, and she would be seeking testimony from her therapist. But the Dr. Whueler assessment was not presented as part of the offer of proof, and there were no specifics offered as to how the assessment was different and how the difference was relevant. There was no description of the therapist's anticipated testimony. A valid offer of proof for proposed testimony must include the name of the witness and the content of the answer to be elicited. (Evid. Code, § 354, subd. (a); *Semsch, supra*, 171 Cal.App.3d at p. 167.)

Mother's offer of proof identified some issues and suggested the direction of her intended argument, but it did not sufficiently identify actual evidence that would support her request for a contested evidentiary hearing. (*Schmies, supra*, 44 Cal.App.4th at p. 53) Moreover, mother's focus on her own circumstances and progress in addressing her trauma was only marginally relevant to the issues before the juvenile court. The juvenile court was considering termination of dependency, custody, and visitation. The focus was properly on the needs and best interests of the minor. In making its exit orders, the juvenile court explained it was suspending mother's visitation to give the minor a chance

7

to recover from past trauma.  Mother will have an opportunity in family court to seek reinstatement of visitation based on a change in circumstances.  (Fam. Code, § 217.) Here, however, she has not established error.

DISPOSITION

The orders of the juvenile court are affirmed.


/S/

MAURO, J.

We concur:


/S/

ROBIE, Acting P. J.


/S/

McADAM, J.*

---

\* Judge of the Yolo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.